IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION

|  |  |
|---|---|
| AM GENERAL LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>ACTIVISION BLIZZARD, INC.,<br>ACTIVISION PUBLISHING, INC., and<br>MAJOR LEAGUE GAMING CORP.<br><br>    Defendants. | C.A. No. 2:17-cv-08644<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff AM General LLC ("AM General") states the following for its Complaint against Defendants Activision Blizzard, Inc., Activision Publishing, Inc., and Major League Gaming Corp. (collectively, "Defendants").

## INTRODUCTION

Plaintiff AM General LLC ("AM General") makes the HUMVEE®-branded vehicle and owns registrations for the HUMVEE® and HMMWV® marks and the distinctive elements that comprise the AM General Trade Dress.  Wrongfully leveraging the goodwill and reputation AM General has developed in these marks, Defendants have used and continue to use AM General's trademarks and trade dress in advertising and promotion of their Call of Duty® video game franchise; have featured and continue to feature AM General's trademarks and vehicles bearing the distinctive elements of the AM General Trade Dress prominently in their video games; and have caused and continue to cause the manufacture and sale of collateral toys and books to

further derive wrongful profits from AM General's intellectual property and to further promote Defendants' infringing video games.  Defendants' video games have been successful but only at the expense of AM General and consumers who are deceived into believing that AM General licenses the games or is somehow connected with or involved in the creation of the games. Defendants have reaped billions of dollars in revenues from their wrongful acts and, in the process, have irreparably harmed AM General by causing significant confusion, expressly misleading the consuming public, and diluting the goodwill and reputation of AM General's famous marks.

## NATURE OF ACTION

1.      This is an action at law and in equity for trademark infringement, trade dress infringement, false designation of origin, false advertising, dilution, and related wrongs.  AM General's claims against Defendants arise under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act"), the common law of New York, and New York General Business Law § 360-*l*.

## THE PARTIES

2.      AM General is headquartered in South Bend, Indiana, and is organized and existing under the laws of the State of Delaware.  AM General's sole member is AM General Holdings LLC, whose controlling member is MacAndrews AMG Holdings LLC.  The sole member of MacAndrews AMG Holdings LLC is MacAndrews & Forbes Inc., which has its principal place of business in New York, New York.

3.      Upon information and belief, Defendant Activision Blizzard, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Santa Monica, California.  Defendant Activision Blizzard, Inc. is registered to do business in New York and has a registered agent in New York.

2

4.      Upon information and belief, Defendant Activision Blizzard, Inc. is an interactive entertainment company and video game developer.  Defendant Activision Blizzard, Inc. earns revenue through the sale, distribution, and licensing of content related to its video games.

5.      Upon information and belief, Defendants Activision Publishing, Inc. and Major League Gaming Corp. are business segments of Defendant Activision Blizzard, Inc.

6.      Upon information and belief, Defendant Activision Publishing, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Santa Monica, California.  Defendant Activision Publishing, Inc. is registered to do business in New York and has a registered agent in New York.

7.      Upon information and belief, Defendant Activision Publishing, Inc. is an American video game developer, publisher, and distributor.  Defendant Activision Publishing, Inc.'s leading product franchise is Call of Duty®.  Games within the Call of Duty® franchise are sold for use on numerous video gaming platforms and are delivered using physical media and internet downloads.  Games within the Call of Duty® franchise enable single-player and multi-player gameplay.  In addition, games within the Call of Duty® franchise may be played via one or more paid subscription services available through the internet, from which one or more of Defendants earns revenues.

8.      Upon information and belief, Defendant Activision Blizzard, Inc. and/or Defendant Activision Publishing, Inc. have licensed content relating to the Call of Duty® franchise for use in video games, toys, books, and other content.  For example, Defendant Activision Blizzard, Inc. and/or Defendant Activision Publishing, Inc. entered into one or more license agreement(s) with MEGA Brands, Inc. and/or Mattel, Inc. relating to the manufacture, distribution, and sale of certain Call of Duty® Collector Construction Sets.  As a further example,

Defendant Activision Blizzard, Inc. and/or Defendant Activision Publishing, Inc. entered into one or more license agreement(s) with BradyGames, Id Software, and/or Penguin Random House LLC (headquartered in New York, New York) relating to the manufacture, publishing, distribution, and sale of certain Call of Duty® Strategy Guides.

9.      Upon information and belief, Defendant Major League Gaming, Corp. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in New York, New York.

10.     Upon information and belief, Defendant Major League Gaming Corp. operates in the eSports business and operates tournaments for video games, including the Call of Duty® franchise.  Defendant Major League Gaming Corp. broadcasts, through internet live streaming, video gaming tournaments, and events.  Players and spectators can observe the broadcasts of the gaming tournaments and events, which depict the content of games, including the Call of Duty® franchise.  Through Defendant Major League Gaming Corp.'s website, players are invited to join tournaments.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the federal claims for trademark infringement, trade dress infringement, false designation of origin, false advertising, dilution, and related wrongs under 28 U.S.C. §§ 1331, 1338(a).  The Court has subject matter jurisdiction over the state claims under 28 U.S.C. § 1367(a).

12.     This Court has personal jurisdiction over the Defendants because Defendants have engaged in infringing conduct, including but not limited to advertising, promoting, and selling infringing products and hosting tournament play, in this District, among other places.  In addition, this Court has personal jurisdiction over Defendant Major League Gaming Corp., because Defendant Major League Gaming Corp. has its principal place of business in this

District, and over Defendants Activision Blizzard, Inc. and Activision Publishing, Inc., because they are registered to do business in New York and have registered agents in New York.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

**A.     AM General's Trademarks and Trade Dress**

14.     AM General designs, engineers, manufactures, supplies, and supports specialized vehicles for military and commercial customers.  It is best known today for its global leadership in the design and production of, and support for, the High Mobility Multipurpose Wheeled Vehicle ("HMMWV"), which is also known as the "HUMVEE" and is widely recognized as the most versatile, dependable, and mobile light tactical wheeled vehicle in the world.  Photographs of exemplary HUMVEE®-branded vehicles are reproduced as Figures 1–4 below:



**Figure 1**



**Figure 2**



**Figure 3**



**Figure 4**

15.     AM General has successfully developed and produced more than 1.5 million vehicles, including more than 278,000 HUMVEE®-branded vehicles.  HUMVEE®-branded vehicles have been in service for more than 30 years with the United States Armed Forces and with over 50 foreign countries.

16.     For many decades, AM General has devoted, and continues to devote, substantial time, effort, and resources in the development and design of HUMVEE®-branded vehicles and to the goodwill and reputation of the HUMVEE® and HMMWV® brands, including the distinctive trade dress associated with HUMVEE®-branded vehicles.

17.     AM General is the owner of all rights, title, and interest in numerous trademarks and trade dress.  Of particular relevance to this action, AM General is the owner of United States Trademark Reg. No. 1,697,530, which covers the HUMVEE® mark for trucks.  A true and accurate copy of Reg. No. 1,697,530 is attached hereto as **Exhibit 1**.  As reflected in **Exhibit 1**, the HUMVEE® mark for trucks was first used in commerce at least as early as April 1983.  The

HUMVEE® mark is incontestable, which means that it is "conclusive evidence" of AM General's ownership of the mark, of the validity of the mark, and of AM General's "exclusive right" to use the mark in commerce for trucks.  *See* 15 U.S.C. § 1115(b).

18.    AM General is also the owner of United States Trademark Reg. No. 2,305,256, which covers the HUMVEE® mark for toys.  A true and accurate copy of Reg. No. 2,305,256 is attached hereto as **Exhibit 2**.  As reflected in **Exhibit 2**, the HUMVEE® mark for toys was first used in commerce at least as early as June 1997.  The HUMVEE® mark is incontestable, which means that it is "conclusive evidence" of AM General's ownership of the mark, of the validity of the mark, and of AM General's "exclusive right" to use the mark in commerce for toys.  *See* 15 U.S.C. § 1115(b).

19.    AM General is also the owner of United States Trademark Reg. No. 3,026,594, which covers the HMMWV® mark for vehicles.  A true and accurate copy of Reg. No. 3,026,594 is attached hereto as **Exhibit 3**.  As reflected in **Exhibit 3**, the HMMWV® mark was first used in commerce at least as early as December 13, 1986.  The HMMWV® mark is incontestable, which means that it is "conclusive evidence" of AM General's ownership of the mark, of the validity of the mark, and of AM General's "exclusive right" to use the mark in commerce for vehicles.  *See* 15 U.S.C. § 1115(b).

20.    In addition, AM General's HUMVEE®-branded vehicles bear certain distinctive elements, which individually and collectively comprise the "AM General Trade Dress."  As shown in Figures 1–4, above, the AM General Trade Dress includes the overall shape of the vehicle, an X design on the lower portion of the vehicle's doors (in certain configurations), a slanted upper rear portion of the vehicle (in certain configurations), side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a

windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, a blackout headlight in the left front hood recess, and/or seven vertical ovals comprising the front grille. *See* 15 U.S.C. § 1115(b).

21.     AM General has registered certain elements of the AM General Trade Dress on the Principal Register of the United States Patent and Trademark Office.  Specifically, AM General is the owner of Reg. No. 5,107,327 (the "Registered AM General Trade Dress") for motor vehicles and toy vehicles.  Figure 5, below, depicts the Registered AM General Trade Dress, which consists of "a three-dimensional configuration of an X design on the lower portion of two vehicle doors, a slanted upper rear portion of a vehicle and side mirror mounts attached to each side of a vehicle adjacent to the windshield." A true and accurate copy of Reg. No. 5,107,327 is attached hereto as **Exhibit 4**.  As reflected in **Exhibit 4**, the Registered AM General Trade Dress was first used in commerce for vehicles at least as early as April 1983 and for toys at least as early as December 31, 1999.  This registration is "prima facie evidence" of AM General's ownership of the mark, of the validity of the mark, and of AM General's "exclusive right" to use the mark in commerce for vehicles and toys.  *See* 15 U.S.C. § 1115(b).



**Figure 5**

22.     The AM General Trade Dress (including but not limited to the Registered AM General Trade Dress) is distinctive and is not functional.  The elements of the AM General Trade Dress (including but not limited to the Registered AM General Trade Dress) serve to allow consumers to easily recognize HUMVEE®-branded vehicles and toys bearing the AM General Trade Dress and to distinguish the source of HUMVEE®-branded vehicles and toys bearing the AM General Trade Dress from the source of vehicles and toys manufactured by others.

23.     The AM General Trade Dress has been held to be valid and well-known and was so held long before the unlawful acts giving rise to this action.  For example, in *General Motors Corp. & AM General, LLC v. Lanard Toys, Inc*., the Sixth Circuit affirmed a summary judgment ruling that the AM General Trade Dress was valid and non-functional as a matter of law. *General Motors Corp. & AM General, LLC v. Lanard Toys, Inc.*, 468 F.3d 405, 417 (6th Cir. 2006).

24.     Based on extensive use, promotion, and sales, the AM General Trade Dress is distinctive and enjoys secondary meaning among consumers as a device that identifies and distinguishes AM General, or a single anonymous source, as the source of HUMVEE®-branded vehicles bearing the AM General Trade Dress.  For example, the AM General Trade Dress has been described as "iconic," "famous," and "world renowned."  *See* **Exhibits 5**–**10**.

25.     Since at least as early as the 1990s, AM General has licensed others to use the HUMVEE® mark and/or the AM General Trade Dress on or in connection with a wide variety of products, which have been sold to millions of consumers throughout the United States.

26.     For example, AM General granted a license to Infogrames Inc. to use the HUMVEE® mark and the AM General Trade Dress in connection with the video game HUMVEE® Assault™.

27.     AM General granted a license to Novalogic, Inc. to use the HUMVEE® mark in connection with the video game Delta Force - Black Hawk Down™.

28.     AM General granted a license to The Codemasters Software Company, Ltd. to use the HUMVEE® mark and the AM General Trade Dress in connection with the video game Operation Flashpoint®: Red River®.

29.     AM General granted a license to THQ Inc. to use the HUMVEE® mark and the AM General Trade Dress in connection with the video game Homefront® and in promotional and other materials related to the Homefront® video game.

30.     AM General granted a license to Maisto International Inc. to use the HUMVEE® mark and the AM General Trade Dress in connection with scale vehicle models.

31.     AM General granted a license to Mattel to use the HUMVEE® mark and the AM General Trade Dress in connection with toys of specified scales.

32.     Consumers have come to expect that goods bearing the HUMVEE® marks, the HMMWV® mark, and/or distinctive elements of the AM General Trade Dress originate from and/or are authorized, licensed, or approved by AM General and were so authorized, licensed, or approved long before the unlawful conduct that forms the basis for this action.  AM General's HUMVEE®  and HMMWV® marks and the AM General Trade Dress are famous to the general purchasing public in the United States and were famous long before the unlawful conduct that forms the basis for this action.

**B.     Defendants' Unlawful Conduct**

**1.     Defendants' Unauthorized Use of HUMVEE® and HMMWV® Marks and the AM General Trade Dress in Connection with Infringing Video Games**

33.     Beginning after AM General's first use in commerce of the HUMVEE®  and HMMWV® marks and the AM General Trade Dress (including but not limited to the Registered

AM General Trade Dress), and seeking to profit from the strength of such marks and dress and the success of goods bearing such marks and/or dress, Defendants have (directly and/or contributorily) produced, manufactured, caused to be manufactured, sold, offered for sale, distributed, and/or induced others to use—and continue to produce, manufacture, cause to be manufactured, sell, offer for sale, distribute, and/or induce others to use—products, including video games and/or other content and materials, that incorporate, use, and prominently rely upon the AM General Trade Dress and that infringe and continue to infringe the HUMVEE® and HMMWV® marks (the "Infringing Products").  Such Infringing Products include but are not limited to the following video games:

- Call of Duty®: Modern Warfare® 2;

- Call of Duty®: Modern Warfare® 3;

- Call of Duty® 4: Modern Warfare®;

- Call of Duty®: Modern Warfare® Remastered;

- Call of Duty® Modern Warfare®: Mobilized;

- Call of Duty®: Black Ops II;

- Call of Duty®: Ghosts; and

- Call of Duty®: Heroes.

True and accurate images of a sample of Defendants' Infringing Products and Defendants' unauthorized use of the AM General Trade Dress and marks to promote these Infringing Products are attached hereto as **Exhibit 11**.

34.    Defendants' wrongful use of AM General's intellectual property, including the AM General Trade Dress and the HUMVEE® and HMMWV® marks, in the Call of Duty® franchise is pervasive, plays a significant role in the gameplay of the Infringing Products, and is a key selling feature of the games.

35.     For example, in Call of Duty®: Modern Warfare® 2, multiple in-game missions and multiplayer levels include depictions of vehicles bearing the (or substantially similar) distinctive design elements of the AM General Trade Dress ("Infringing Vehicles").  In some instances, the game player is able to (and even required to in order to progress in the game) climb onto the Infringing Vehicles and climb into (viewing the interior) and ride in the Infringing Vehicles while controlling and firing a weapon on the vehicle.  *See, e.g.*, **Exhibit 11** at 7–18; **Exhibit 12.**  In others, the player is tasked with manning a weapon from a helicopter to protect Infringing Vehicles that are seen driving on the ground below.  At various points in the game, the Infringing Vehicles are explicitly and misleadingly identified using AM General's marks as, *e.g.*, "HUMVEE 01 M1026 HMMWV."  In other instances, the characters explicitly and misleadingly refer to the Infringing Vehicles as the "Humvee," including dialog that states "We're leaving on Hunter Three's Humvee, over."  There are also Infringing Vehicles depicted in miniature or toy configurations in the game.  The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, X design on the lower portion of the vehicle's doors, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, and seven vertical ovals comprising the front grille. **Exhibit 11** at 7–18.

36.     Figures 6–11, below, are screenshots of Call of Duty®: Modern Warfare® 2 gameplay depicting exemplary unauthorized uses of the HUMVEE® and HMMWV® marks and the AM General Trade Dress.



**Figure 6**



**Figure 7**



**Figure 8**



**Figure 9**



**Figure 10**



**Figure 11**

37.    In Call of Duty®: Modern Warfare® 3, Infringing Vehicles are central to the

gameplay and are a key selling feature of the game.  For example, characters are seen climbing

out of an overturned Infringing Vehicle that is on fire.  In other scenes, the characters explicitly and misleadingly refer to Infringing Vehicles as the "Humvee," including dialog that states "Do not fire on the Humvees, those are our guys," "Get Volk in the Humvee, let's go!," "One of the humvees has just been hit," and "Get a javelin from the Humvee and finish off those tanks."  The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, X design on the lower portion of the vehicle's doors, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, and seven vertical ovals comprising the front grille.  **Exhibit 11** at 21–25.

38.     In Call of Duty® 4: Modern Warfare, multiple in-game missions and multiplayer levels include depictions of Infringing Vehicles.  In some instances, the game player is able to climb onto the Infringing Vehicles and climb into and ride inside the Infringing Vehicles while controlling a weapon on the vehicle.  In others, the player is tasked with manning a weapon from a helicopter to protect Infringing Vehicles that are seen driving on the ground below.  The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, X design on the lower portion of the vehicle's doors, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, and seven vertical ovals comprising the front grille.  **Exhibit 11** at 2–6.

39.     In Call of Duty®: Modern Warfare® Remastered, multiple in-game missions and multiplayer levels include depictions of Infringing Vehicles.  In some instances, the game player

is able to climb onto the Infringing Vehicles.  The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, and seven vertical ovals comprising the front grille.  **Exhibit 11** at 34–35.

40.     In Call of Duty®: Black Ops II, players see Infringing Vehicles, exterior and interior, as part of a mission, and in some instances see characters exit the Infringing Vehicles. The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, X design on the lower portion of the vehicle's doors, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, a blackout headlight in the left front hood recess, and seven vertical ovals comprising the front grille.  **Exhibit 11** at 26–29.

41.     In Call of Duty®: Ghosts, players are able to see Infringing Vehicles, maneuver around them, and climb on them. The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, a blackout headlight in the left front hood recess, and seven vertical ovals comprising the front grille. **Exhibit 11** at 30–32.

42.     In Call of Duty® Modern Warfare®: Mobilized, players can approach an Infringing Vehicle and control a weapon on the top of an Infringing Vehicle. **Exhibit 11** at 19–20.  The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, a blackout headlight in the left front hood recess, and seven vertical ovals comprising the front grille.  **Exhibit 11** at 19–20.

43.     In Call of Duty®: Heroes, Infringing Vehicles are seen driving along roads near the player's base. The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape.  **Exhibit 11** at 33.

44.     Figures 12–13, below, are screenshots depicting exemplary Infringing Vehicles in the Infringing Products, which have been annotated to call out Defendants' unauthorized use of certain distinctive elements of the AM General Trade Dress.

45.     Figure 12 is exemplary of Defendants' wrongful use of AM General Trade Dress, including the vehicle's overall shape, which is a distinctive element of the AM General Trade Dress.  Figure 12A includes a red annotation calling out the depicted windshield that is bisected by a metal bar and does not have lights above it, which are distinctive elements of the AM General Trade Dress.  Figure 12B includes a red annotation calling out the depicted seven vertical ovals comprising the front grille, which is a distinctive element of the AM General Trade Dress.  Figure 12C includes a red annotation calling out the depicted side mirror mounts attached to each side of a vehicle adjacent to the vehicle windshield (not to the vehicle's doors), which are distinctive elements of the AM General Trade Dress.  Figure 12D includes a red annotation

calling out the depicted blackout headlight in the left front hood recess, which is a distinctive element of the AM General Trade Dress.



**Figure 12**



**Figure 12A**                              **Figure 12B**



**Figure 12C**                    **Figure 12D**

Figure 13 is exemplary of Defendants' wrongful use of the AM General Trade Dress, including the vehicle's overall shape, which is a distinctive element of the AM General Trade Dress. Figure 13A includes a red annotation calling out the depicted X design on the lower portion of two vehicle doors, which is a distinctive element of the AM General Trade Dress. Figure 13B includes a red annotation calling out the depicted the rectangular doors, which is a distinctive element of the AM General Trade Dress. Figure 13C includes a red annotation calling out the slanted upper rear portion of the vehicle, which is a distinctive element of the AM General Trade Dress.



**Figure 13**



**Figure 13A**                    **Figure 13B**



**Figure 13C**

46.     Upon information and belief, Defendants also license, distribute, and/or provide access to the Infringing Video Games through subscription services.  For example, in 2011 Defendants Activision Blizzard, Inc. and Activision Publishing, Inc. launched Call of Duty®: Elite, an online subscription-based service offering additional multiplayer content.  Premium members of the Call of Duty®: Elite service were charged $50 per year for the service.

### 2.     Defendants' Unauthorized Use of the AM General Trade Dress in Connection with Advertising and Promotion of Infringing Video Games

47.     Without AM General's permission, in order to promote certain of Defendants' Infringing Products, in order to advertise the pervasive depiction of Infringing Vehicles in Defendants' Infringing Products, and in a manner that explicitly misleads consumers into believing that AM General or the maker of HUMVEE®-branded vehicles (if unknown) sponsors or supports Defendants' Infringing Products, Defendants have prominently depicted vehicles bearing the distinctive elements of the AM General Trade Dress in advertising and marketing materials.  True and accurate copies of images taken from Defendants' advertising materials are attached as **Exhibit 13**.

48.     For example, video trailers used to promote the Call of Duty® video games prominently feature depictions of vehicles bearing distinctive elements of the AM General Trade Dress. **Exhibit 13** at 2–11.

49.     The "Launch Trailer" for Call of Duty®: Modern Warfare® 2 starts with series of shots depicting soldiers getting into and driving a prominently featured Infringing Vehicle from multiple angles. **Exhibit 13** at 3–5.



GamerSpawn, *Call of Duty: Modern Warfare 2 – Launch Trailer*, YouTube (Nov. 5, 2009), https://www.youtube.com/watch?v=AzwBeDV5IAY.

50.    The "Reveal Trailer" and "Infamy Trailer" for Call of Duty®: Modern Warfare® 2, both depict Infringing Vehicles being driven and getting blown up. *See, e.g.*, **Exhibit 13** at 2, 7–9.



GamerSpawn, *Call of Duty: Modern Warfare 2 – Infamy Trailer*, YouTube (Oct. 4, 2009), https://www.youtube.com/watch?v=CbOWr1boplE.

51.     The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, X design on the lower portion of the vehicle's doors, slanted upper rear portion, side mirror mounts attached to each side of the vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, and seven vertical ovals comprising the front grille. **Exhibit 13** at 2–9.

52.     In the "Launch Trailer" for Call of Duty®: Modern Warfare® 3, Infringing Vehicles are shown on a bridge before they are blown up. The Infringing Vehicles depicted include distinctive elements of the AM General Trade Dress, including its overall shape, side mirror mounts attached to each side of a vehicle adjacent to the vehicle windshield (not to the vehicle's doors), and seven vertical ovals comprising the front grille. *See, e.g.*, **Exhibit 13** at 10–11.



Call of Duty MW3, https://www.callofduty.com/mw3 (last visited Nov.6, 2017).

53.     Upon information and belief, Defendants have used actual HUMVEE®-branded vehicles bearing the AM General Trade Dress to promote Defendants' Infringing Products, to advertise the pervasive, wrongful use of the HUMVEE® and HMMWV® marks and the AM General Trade Dress in Call of Duty® franchise games, and to expressly mislead consumers to believe AM General or the maker of HUMVEE®-branded vehicles (even if unknown) sponsors, licenses or otherwise approves Defendants' Infringing Products and/or that AM General or the maker of HUMVEE®-branded vehicles worked with or was connected with or involved in the production of the Infringing Products by way of, for example, providing technical assistance or consulting with regard to how HUMVEE®-branded vehicles perform in battle. For example, Defendants promoted Call of Duty®: Black Ops by driving HUMVEE®-branded vehicles bearing the AM General Trade Dress, which had been painted so as to display the Call of Duty®: Black Ops logo.  **Exhibit 13** at 12–13.



*HMMWV HUMVEE,s Call of duty Black Ops Den Haag.mpg*, YouTube (Nov. 12, 2010), https://www.youtube.com/watch?v=7d2TA4U-oAQ.

**3.**   **Defendants' Unauthorized Use of the AM General Trade Dress in Connection with MegaBloks Toys**

54.   Upon information and belief, one or more of Defendants arranged for the manufacture, distribution, and sale of toy vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress.  For example, in or around 2013 Defendants and MEGA Brands released a seven-toy series of Call of Duty® Collector Construction Sets to promote, advertise and further extract profits from the Call of Duty® franchise.  One of the seven toys is the "Light Armor Firebase," No. 06817, which includes a toy vehicle bearing the (or substantially similar) distinctive elements of the AM General Trade Dress.  *See, e.g.*, **Exhibit 14** at 4.



*Light Armor Firebase Call of Duty*, MEGA Shop, https://shop.megabrands.com/en-us/shop/construction-toys/call-of-duty/light-armor-firebase-dcl23 (last visited Nov. 6, 2017).

55.    And in or around 2016, Defendants and MEGA Brands released an eight-toy series of Call of Duty® Collector Construction Sets.  One of the eight toys is the "Armored Vehicle Charge," No. DPB57, which includes a toy vehicle bearing the (or substantially similar) distinctive elements of the AM General Trade Dress.  *See, e.g.*, **Exhibit 14** at 2.



*Armored Vehicle Charge Call of Duty*, MEGA Shop, https://shop.megabrands.com/en-ca/shop/construction-toys/call-of-duty/armored-vehicle-charge-dpb57 (last visited Nov. 6, 2017).

56.    The packaging and instruction manuals accompanying the toys described in Paragraphs 54–55, above, bear the ACTIVISION® mark and the notice "©20[xx] Activision Publishing, Inc. ACTIVISION, and CALL OF DUTY are trademarks of Activision Publishing, Inc." **Exhibit 14** at 3, 5.




Building Instructions for *Armored Vehicle Charge Call of Duty*, MEGA Shop, https://s1.megabrandsmedia.com/instructions/products/instruction-armored-vehicle-charge-dpb57-18036.pdf (last visited Nov. 6, 2017).

57.     Upon information and belief, in connection with the manufacture, distribution and sale of the toys described in Paragraphs 54–55, above, one or more of Defendants falsely stated to MEGA Brands, Inc. and/or Mattel, Inc. that Activision had the authority to provide the rights to depict a vehicle bearing the distinctive elements of the AM General Trade Dress.

58.     Upon information and belief, such use of the AM General Trade Dress in connection with the manufacture, distribution and sale of the toys described in Paragraphs 54–55, above, without license or authorization from AM General, further served to promote

30

Defendants' Infringing Products, advertise the pervasive depiction of vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress in Defendants' Infringing Products and expressly mislead consumers to believe AM General or the maker of HUMVEE®-branded vehicles (if unknown) sponsors or supports Defendants' Infringing Products.

> **4.      Defendants' Unauthorized Use of HUMVEE® mark and the AM General Trade Dress in Connection with BradyGames Strategy Guides**

59.      Upon information and belief, one or more of Defendants authorized BradyGames, Id Software, and/or Penguin Random House LLC to manufacture, publish, distribute, and sell strategy guides for Defendants' Infringing Products.

60.      Upon information and belief, in 2011, Activision entered into a "Strategy Guide Publishing Agreement" with BradyGames for such strategy guides.

61.      Such strategy guides pervasively and misleadingly use the HUMVEE® mark and depict vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress.  For example, the Call of Duty®: Modern Warfare® 2 strategy guide describes the various acts, missions, and other details of Call of Duty®: Modern Warfare® 2.  The Call of Duty®: Modern Warfare® 2 strategy guide prominently features Infringing Vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress, examples of which are shown in **Exhibit 15** at 2–5.

62.      For example, as shown in Figure 14 (*see also* **Exhibit 15** at 3), below, the Call of Duty®: Modern Warfare® 2 strategy guide introduces Act 1 of the game on pages 10 and 11 and prominently depicts Infringing Vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress, including the overall shape of the vehicle, an X design on the lower portion of the vehicle's doors, a slanted upper rear portion of the vehicle, side

mirror mounts attached to each side of a vehicle adjacent to the vehicle windshield (not to the vehicle's doors), a windshield that is bisected by a metal bar and does not have lights above it, windshield wipers attached to the top of the front windows, rectangular doors, a blackout headlight in the left front hood recess, and seven vertical ovals comprising the front grille.



**Figure 14**

63.     The Call of Duty®: Modern Warfare® 2 strategy guide continues by describing engagements of Act 1, which prominently feature Infringing Vehicles as part of the gameplay. In doing so, the strategy guide makes pervasive use of the HUMVEE® mark.  **Exhibit 15** at 2–4. For example on page 18 (**Exhibit 15** at 4), "Engagement 2," is introduced as follows:

> Once the militants begin to fall back, proceed up the stairs to the bridge and wait for your Humvee to roll up. Then hop in the back. Don't run in front of it—you can get squashed!

Similarly, on page 18 (**Exhibit 15** at 4), "Engagement 3" is introduced as follows:

> The next section has you manning a mounted turret on your Humvee as the convoy rolls through the streets.  Once you get

clearance to open up, don't feel shy about holding the trigger—there's no ammo limit, and you can't overheat!

"Engagement 3" is further described on page 19 (**Exhibit 15** at 4) as follows:

However, this doesn't last, as the sounds of gunfire ring out ahead. Your Humvee pulls up to an abandoned school.  Militants run along the rooftop in plain view, armed and firing at the convoy.

64.    Similarly, the Call of Duty®: Modern Warfare® 3 strategy guide describes the various acts, missions, and other details of Call of Duty®: Modern Warfare® 3 and features Infringing Vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress. **Exhibit 15** at 7–9.



65. The strategy guides described in Paragraphs 59–64, above, bear the ACTIVISION® mark and the notice "©20[xx] Activision Publishing, Inc. ACTIVISION, CALL OF DUTY and MODERN WARFARE are [registered] trademarks [or registered trademarks] [and CALL OF DUTY MW3 is a trademark] of Activision Publishing, Inc." **Exhibit 15** at 6, 10.

66. Upon information and belief, such use of the HUMVEE® mark and the distinctive elements of the AM General Trade Dress in connection with the manufacture, distribution, and sale of the strategy guides described in Paragraphs 59–64, above, without license or authorization from AM General, further served to promote Defendants' Infringing Products, advertise the pervasive depiction of vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress in Defendants' Infringing Products, and expressly mislead consumers to believe AM General or the maker of HUMVEE®-branded vehicles (if unknown) sponsors or supports Defendants' Infringing Products.

**5.** **Defendants' Widespread, Pervasive, and Unauthorized Use of the HUMVEE® and HMMWV® marks and the AM General Trade Dress Is Willful, Causes Confusion, and Expressly Misleads Consumers**

67. As detailed above, Defendants have misappropriated, copied and used, and continue to misappropriate, copy, and use, the AM General Trade Dress and the HUMVEE® and HMMWV® marks in connection with the Infringing Products and the advertising, promotion, and sale thereof.

68. Defendants' use of the AM General Trade Dress and HUMVEE® and HMMWV® marks in connection with the advertising, promotion, and sale of the Infringing Products has caused and is likely to cause purchasers and potential purchasers to falsely believe that Defendants' Infringing Products are associated with, are approved, licensed, or sponsored by AM General or the maker of HUMVEE®-branded vehicles (if unknown) or that AM General or

34

the maker of HUMVEE®-branded vehicles (if unknown) participated in the creation of the Infringing Products or was otherwise consulted or involved with those products.

69.    Defendants have distributed and continue to make available user guides for Defendants' Infringing Video Games.  Such user guides include a so-called "Software License Agreement," which states to customers the following (or similar) language:

> OWNERSHIP.  All title, ownership rights and intellectual property rights in and to this Program and any and all copies thereof (including but not limited to any titles, computer code, themes, objects, characters, character names, stories, dialog, catch phrases, locations, concepts, artwork, animation, sounds, musical compositions, audio-visual effects, methods of operation, moral rights, and any related documentation, incorporated into this Program) are owned by Activision or its licensors.
>
> …  This Program contains certain licensed materials and Activision's licensors may protect their rights in the event of any violation of this Agreement.

**Exhibit 16**.  Such statements are false and misleading. AM General did not license Activision's use of the HUMVEE® and HMMWV® marks and AM General Trade Dress, and Activision does not own the HUMVEE® and HMMWV® marks or AM General Trade Dress.

70.    Such statements by Defendants expressly mislead customers to believe AM General or the maker of HUMVEE®-branded vehicles (if unknown) sponsors, supports, or has otherwise authorized or licensed Defendants' use of HUMVEE® and HMMWV® marks and depiction of vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress, or participated in the design of the products.

71.    Upon information and belief, Defendants' misappropriation of, copying of, and use of colorable imitations of AM General's Trade Dress has been done with Defendants' knowledge of Plaintiff AM General's rights therein; with an intent to trade upon and pirate away the substantial reputation and goodwill symbolized by the AM General Trade Dress; and with an

intent to cause confusion, mistake, or deception among purchasers, potential purchasers, the public, and/or the trade.

72.     The foregoing activities of Defendants also demonstrate Defendants' clear and unmistakable intent to infringe AM General's marks.  Defendants' use in the Infringing Products of AM General's marks has caused and is likely to cause confusion, mistake, and deception among purchasers and potential purchasers and to deceive the public into purchasing Defendants' Infringing Products and/or believing that Defendants' Infringing Products are associated with, are approved by, and/or are sponsored by AM General when that is not the case.

73.     Defendants' pervasive and prominent use in the Infringing Products—in the form of video games, toys, and other content—of AM General Trade Dress and marks is designed to create the false impression that Plaintiff AM General has authorized Defendants' use.  *See* **Exhibit 16**.

**6.     Defendants' Unauthorized Use of the HUMVEE® and HMMWV® marks and the AM General Trade Dress Is Causing and Has Caused Harm to AM General**

74.     Defendants' activities with respect to the Infringing Products have resulted in, are resulting in, and will continue to result in harm to AM General, including without limitation damage to Plaintiff AM General's reputation and goodwill symbolized by the AM General Trade Dress and marks as well as monetary losses and damage.

75.     Upon information and belief, Defendants have wrongfully profited and have been unjustly enriched by their sales and/or licensing of the Infringing Products directly and/or contributorily.

76.     Upon information and belief, Defendants' sale and/or licensing of the Infringing Products have generated substantially in excess of US $5,200,000,000.00 in revenue.

77. Upon information and belief, Defendants' sales of the Infringing Products have resulted in over 130 million units sold.

**C.**   **AM General's Knowledge of Defendants' Wrongful Conduct**

78. Upon information and belief, AM General first became aware of Defendants' unauthorized use of AM General's intellectual property in or around May 2016. More specifically, on May 24, 2016, a representative of Global Icons, LLC—an outside licensing agency whose contractual duties include the policing of AM General's trademarks and trade dress—alerted counsel for AM General to the fact that Defendant Activision Blizzard, Inc. and/or Defendant Activision Publishing, Inc. ("Activision") was using depictions of vehicles bearing the (or substantially similar) distinctive elements of the AM General Trade Dress in video games and toys as part of the Call of Duty® franchise. The nature and extent of Defendants' wrongful use was at that time unknown.

79. On or about June 20, 2016, counsel for Global Icons (on behalf of AM General) sent a cease-and-desist letter to Activision. Activision and Global Icons engaged in informal communications regarding this dispute in at least August, September, and October 2016. Activision did not substantively respond until January 2017.

80. On or about January 18, 2017, Activision sent Global Icons a letter responding to the June 2016 cease-and-desist letter. Thereafter, Activision and Global Icons engaged in oral and email communications in at least March and August 2017.

81. Upon information and belief, Defendants continue to engage in unauthorized, wrongful, and misleading use of AM General's marks and trade dress.

## FIRST CAUSE OF ACTION
Federal Trademark Infringement, 15 U.S.C. § 1114
(Against All Defendants)

82.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

83.    AM General owns incontestable federal trademark registrations for HUMVEE® for trucks and toys.  *See* Reg. Nos. 1,697,530 and 2,305,526.

84.    Defendants have had both actual and constructive knowledge of AM General's federally registered HUMVEE® marks.

85.    Defendants have used, are using, and have caused others to use AM General's federally registered HUMVEE® marks, and marks confusingly similar thereto, in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

86.    Defendants' unauthorized use of AM General's HUMVEE® marks has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of 15 U.S.C. § 1114.

87.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its federally registered HUMVEE® marks and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

88.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

89.    Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in its federally registered HUMVEE® marks and to irreparably injure AM General's business, reputation, and goodwill. Unless Defendants are enjoined from their

unlawful conduct, AM General will continue to suffer irreparable harm for which it has no adequate remedy at law.

## SECOND CAUSE OF ACTION
Federal Trademark Infringement, 15 U.S.C. § 1114
(Against All Defendants)

90.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

91.     AM General owns an incontestable federal trademark registration for HMMWV® for vehicles.  *See* Reg. No. 3,026,594.

92.     Defendants have had both actual and constructive knowledge of AM General's federally registered HMMWV® mark.

93.     Defendants have used, are using, and have caused others to use AM General's federally registered HMMWV® mark, and marks confusingly similar thereto, in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

94.     Defendants' unauthorized use of AM General's HMMWV® mark has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of 15 U.S.C. § 1114.

95.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its federally registered HMMWV® mark and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

96.     As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

97.     Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in its federally registered HMMWV® mark and to irreparably injure AM General's business, reputation, and goodwill. Unless Defendants are enjoined from their unlawful conduct, AM General will continue to suffer irreparable harm for which it has no adequate remedy at law.

**THIRD CAUSE OF ACTION**
Federal Trade Dress Infringement, 15 U.S.C. § 1114
(Against All Defendants)

98.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

99.     AM General owns a federal trademark registration for certain elements of the AM General Trade Dress ("the Registered AM General Trade Dress") for motor vehicles and toy vehicles.  *See* Reg. No. 5,107,327.

100.    The Registered AM General Trade Dress is distinctive and is not functional.

101.    Defendants have had both actual and constructive knowledge of the Registered AM General Trade Dress.

102.    Defendants have used, are using, and have caused others to use the Registered AM General Trade Dress in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization and with full knowledge of AM General's rights in that trade dress.

103.    Defendants' unauthorized use of the Registered AM General Trade Dress has caused and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of 15 U.S.C. § 1114.

104.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and the Registered AM General Trade Dress and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

105.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

106.    Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in the Registered AM General Trade Dress and to irreparably injure AM General's business, reputation, and goodwill.  Unless Defendants are permanently enjoined from their wrongful conduct, AM General will continue to suffer irreparable harm for which it has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
Federal Trademark Infringement, Unfair Competition, and False Designation of Origin
15 U.S.C. § 1125
(Against All Defendants)

107.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

108.    AM General owns common law marks for HUMVEE for a variety of goods and services, including vehicles and toys.

109.    Defendants have had both actual and constructive knowledge of AM General's superior rights in the HUMVEE marks.

110.    Defendants have used, are using, and have caused others to use in commerce AM General's HUMVEE marks in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

111.    Defendants' unauthorized use of AM General's HUMVEE marks has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of 15 U.S.C. § 1125.

112.    Defendants' unlawful conduct was knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its HUMVEE marks and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

113.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

114.    Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in its HUMVEE marks and to irreparably injure AM General's business, reputation, and goodwill. Unless Defendants are permanently enjoined from their unlawful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
Federal Trademark Infringement, Unfair Competition, and False Designation of Origin
15 U.S.C. § 1125
(Against All Defendants)

115.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

116.    AM General owns common law marks for HMMWV for a variety of goods and services, including vehicles and toys.

117.    Defendants have had both actual and constructive knowledge of AM General's superior rights in the HMMWV mark.

118.    Defendants have used, are using, and have caused others to use AM General's HMMWV mark in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

119.    Defendants' unauthorized use of AM General's HMMWV mark has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of 15 U.S.C. § 1125.

120.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its HMMWV mark and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

121.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

122.    Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in its HMMWV mark and to irreparably injure AM General's business, reputation, and goodwill. Unless Defendants are permanently enjoined from their wrongful conduct, AM General will continue to suffer irreparable conduct for which it has no adequate remedy at law.

### SIXTH CAUSE OF ACTION
Federal Trade Dress Infringement, Unfair Competition, and False Designation of Origin
15 U.S.C. § 1125
(Against All Defendants)

123.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

124.    AM General owns common law rights in the AM General Trade Dress for a variety of goods and services, including vehicles and toys.

125.    The AM General Trade Dress is distinctive and is not functional.

126.    Defendants have had both actual and constructive knowledge of AM General's superior rights in the AM General Trade Dress.

127.    Defendants have used, are using, and have caused others to use in commerce the AM General Trade Dress in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

128.    Defendants' unauthorized use of the AM General Trade Dress has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of 15 U.S.C. § 1125.

129.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and the AM General Trade Dress and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

130.    As a result of Defendant's unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

131.    Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in the AM General Trade Dress and to irreparably injure AM General's business, reputation, and goodwill. Unless Defendants are permanently enjoined from their unlawful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

**SEVENTH CAUSE OF ACTION**
Federal False Advertising, 15 U.S.C. § 1125
(Against All Defendants)

132.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

133.    Upon information and belief, Defendants have stated to third-party manufacturers and others in the trade that they have the authority to approve the use of the AM General Trade Dress in connection with the advertising, promotion, and sale of goods when in fact Defendants never had such authority.

134.    Defendants are distributing, have distributed, and caused others to distribute user guides for Defendants' infringing video games that misrepresent that Defendants' use of the AM General Trade Dress and HUMVEE® and HMMWV® marks is authorized, licensed, or sponsored by AM General when in fact it is not.

135.    Defendants' false or misleading statements misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities, and have deceived and are likely to deceive the public and the trade in violation of 15 U.S.C. § 1125.

136.    Defendants' unlawful conduct was and is knowing, willful, deliberate, and in bad faith because Defendants knew at the time the statements were made that they were false or misleading statements and made the statements in order to increase the sales of their goods or services.

137.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

138.    Unless Defendants are permanently enjoined from their unlawful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

### EIGHTH CAUSE OF ACTION
Federal Trade Dress and Trademark Dilution, 15 U.S.C. § 1125(c)
(Against All Defendants)

139.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

140.    AM General owns the AM General Trade Dress, including the Registered AM General Trade Dress.  The AM General Trade Dress is distinctive and is not functional.

141.    AM General also owns the distinctive HUMVEE® and HMMWV® marks.

142.    The AM General Trade Dress and HUMVEE® and HMMWV® marks are widely recognized by the general consuming public and are famous and became famous long before Defendants commenced their unlawful use of that trade dress and those marks.

143.    Defendants have used, are using, and have caused others to use the AM General Trade Dress and the HUMVEE® and HMMWV® marks, and substantially similar trade dress and marks, in commerce in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

144.    Defendants' unauthorized use of the AM General Trade Dress and HUMVEE® and HMMWV® marks, and substantially similar trade dress and marks, is likely to impair and damage the distinctiveness of AM General's Trade Dress and its HUMVEE® and HMMWV® marks by causing the public to no longer associate the AM General Trade Dress and those marks exclusively with the goods and services offered by AM General and its licensees, which constitutes dilution by blurring in violation of 15 U.S.C. § 1125(c).

145.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its AM General Trade Dress and HUMVEE® and HMMWV® marks, to impair the distinctiveness of that trade dress and those marks, and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

46

146.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

147.    Unless Defendants are permanently enjoined from their wrongful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

### NINTH CAUSE OF ACTION
Trademark Infringement, Unfair Competition, and False Designation of Origin
Under New York Law
(Against All Defendants)

148.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

149.    AM General owns common law trademark rights in the HUMVEE and HMMWV marks for a variety of goods and services, including vehicles and toys.

150.    Defendants have had both actual and constructive knowledge of AM General's superior rights in the HUMVEE and HMMWV marks.

151.    Defendants have used, are using, and have caused others to use AM General's HUMVEE and HMMWV marks in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

152.    Through Defendants' unauthorized use, Defendants unfairly appropriated or exploited the special qualities associated with AM General's HUMVEE and HMMWV marks, resulting in the misappropriation of a commercial advantage belonging to AM General.

153.    Defendants' unauthorized use of AM General's HUMVEE and HMMWV marks has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of New York law.

154. Defendants' unlawful conduct was knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its HUMVEE and HMMWV marks and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

155. As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

156. Unless Defendants are permanently enjoined from their wrongful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

### TENTH CAUSE OF ACTION
Trade Dress Infringement Under New York Law
(Against All Defendants)

157. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

158. AM General owns common law rights in the AM General Trade Dress for a variety of goods and services, including vehicles and toys.

159. The AM General Trade Dress is distinctive and is not functional.

160. Defendants have had both actual and constructive knowledge of AM General's superior rights in the AM General Trade Dress.

161. Defendants have used, are using, and have caused others to use the AM General Trade Dress in connection with the advertising, promotion, and sale of their goods and services without AM General's authorization.

162. Through Defendants' unauthorized use, Defendants unfairly appropriated or exploited the special qualities associated with the AM General Trade Dress, resulting in the misappropriation of a commercial advantage belonging to AM General.

163.    Defendants' unauthorized use of the AM General Trade Dress has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, AM General, in violation of New York law.

164.    Defendants' unlawful conduct was and is knowing, deliberate, and willful and done with the intent to trade on the goodwill and reputation of AM General and the AM General Trade Dress and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

165.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

166.    Defendants' unlawful conduct has caused AM General to lose control over the goodwill it has established in its trade dress and to irreparably injure AM General's business, reputation, and goodwill. Unless Defendants are permanently enjoined from their unlawful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

### ELEVENTH CAUSE OF ACTION
False Advertising and Unfair Competition Under New York Law
(Against All Defendants)

167.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

168.    Upon information and belief, Defendants have stated to third-party manufacturers and others in the trade that they have the authority to approve the use of the AM General Trade Dress in connection with the advertising, promotion, and sale of goods and services when in fact Defendants never had such authority.

169.    Defendants are distributing, have distributed, and have caused others to distribute user guides for Defendants' infringing video games that misrepresent that Defendants' use of the

AM General Trade Dress and HUMVEE and HMMWV marks is authorized, licensed, or sponsored by AM General when in fact it is not.

170.    Defendants' false or misleading statements misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities and have deceived and are likely to deceive the public and the trade in violation of New York law.

171.    Defendants' unlawful conduct was and is knowing, willful, deliberate, and in bad faith because Defendants knew at the time the statements were made that they were false and made the statements in order to increase the sales of their video games.

172.    As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

173.    Unless Defendants are permanently enjoined from their unlawful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

## TWELFTH CAUSE OF ACTION
Trademark Dilution in Violation of N.Y. Gen. Bus. Law § 360-*l*
(Against All Defendants)

174.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

175.    AM General owns the AM General Trade Dress.  The AM General Trade Dress is distinctive and is not functional.

176.    AM General also owns the distinctive HUMVEE® and HMMWV® marks.

177.    Defendants have used, are using, and have caused others to use the AM General Trade Dress and HUMVEE® and HMMWV® marks without AM General's authorization.

178.    Defendants' unauthorized use of the AM General Trade Dress and HUMVEE and HMMWV marks has impaired and damaged and is likely to impair and damage the distinctiveness of AM General's Trade Dress and HUMVEE® and HMMWV® marks by causing

the public to no longer associate that trade dress and those marks exclusively with the goods and services offered by AM General and its licensees, which constitutes dilution by blurring in violation of N.Y. Gen. Bus. Law. Section 360-*l*.

179.   Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of AM General and its AM General Trade Dress and HUMVEE® and HMMWV® marks, to impair the distinctiveness of that trade dress and those marks, and to deceive consumers into believing that AM General was connected with Defendants' goods and services.

180.   As a result of Defendants' unlawful conduct, AM General has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

181.   Unless Defendants are permanently enjoined from their wrongful conduct, AM General will continue to suffer irreparable injury for which it has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing allegations, AM General prays for judgment and relief as follows:

A.   That this Court enter judgment in favor of AM General and against Defendants, jointly and severally, on all claims for relief alleged herein;

B.   That this Court issue a permanent injunction that:

1.   Enjoins Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action from using AM General's HUMVEE and HMMWV marks and the AM General Trade Dress, alone or in combination with any word(s), term(s), designation(s), marks(s), or

design(s), as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of AM General's HUMVEE and HMMWV marks and the AM General Trade Dress;

2. Enjoins Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action from making false or misleading statements concerning AM General's HUMVEE and HMMWV marks and the AM General Trade Dress and Defendants' use thereof, whether Defendants' use of AM General's HUMVEE and HMMWV marks and the AM General Trade Dress is licensed, sponsored, or approved by AM General; whether third parties have the authorization to use AM General's HUMVEE and HMMWV marks and the AM General Trade Dress; in the sale, advertising, or promotion of their goods and services using AM General's HUMVEE and HMMWV marks and the AM General Trade Dress, alone or in combination with any word(s), term(s), designation(s), marks(s), or design(s), as well as any mark, image, or depiction that is confusingly similar or likely to impair AM General's HUMVEE and HMMWV marks and/or the AM General Trade Dress;

3. Requires Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action to engage in corrective advertising in a

form pre-approved by AM General and the Court to dispel the confusion caused by Defendants' unlawful conduct, including Defendants' misrepresentations that they have the right to authorize the use of the AM General Trade Dress and AM General's trademarks; and

4. Requires Defendants to file with the Court and serve on AM General, within thirty (30) days after entry of an injunction, a report in writing under oath setting forth in detail the manner in which Defendants have complied with the Court's injunction.

C.  That this Court grant monetary relief in the form of:

1. Compensatory damages under 15 U.S.C. § 1117 and New York law for all injuries to AM General caused by Defendants' acts alleged herein;

2. An accounting of Defendants' profits derived by Defendants' acts alleged herein under 15 U.S.C. § 1117 and New York law and said accounting trebled;

3. Punitive damages under New York law;

4. Enhanced or treble damages under 15 U.S.C. § 1117 and New York law;

5. Attorneys' fees and costs under 15 U.S.C. § 1117 and New York law;

6. Prejudgment and postjudgment interest; and

7. Such other and further relief which the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff AM General respectfully demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all claims and issues so triable.

Dated: November 7, 2017

Respectfully submitted,

By:_____

Nicole M. Jantzi (No. 4095451)
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001

Telephone: (202) 756-8000
Facsimile: (202) 756-8087
Email: njantzi@mwe.com

*Of Counsel*:
Paul M. Schoenhard (*pro hac vice* pending)
John J. Dabney (*pro hac vice* pending)
Ian B. Brooks (*pro hac vice* pending)
Mary D. Hallerman (*pro hac vice* pending)
Sarah P. Hogarth (*pro hac vice* pending)
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001

Telephone: (202) 756-8000
Facsimile: (202) 756-8087
Email: pschoenhard@mwe.com
Email: jdabney@mwe.com
Email: ibrooks@mwe.com
Email: mhallerman@mwe.com
Email: shogarth@mwe.com

COUNSEL FOR PLAINTIFF
AM GENERAL LLC