UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AM GENERAL LLC,

       Plaintiff,

  v.

ACTIVISION BLIZZARD, INC.,
ACTIVISION PUBLISHING, INC., and
MAJOR LEAGUE GAMING CORP.,

      Defendants.

CASE NO. 1:17-cv-08644-GBD

**REPLY MEMORANDUM OF DEFENDANTS ACTIVISION BLIZZARD, INC.,
ACTIVISION PUBLISHING, INC., AND MAJOR LEAGUE GAMING CORP. IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

11229958.11

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

I.     AMG CANNOT CARRY ITS BURDEN OF PROVING THAT
       ACTIVISION'S USE HAS NO ARTISTIC RELEVANCE OR IS
       EXPLICITLY MISLEADING.............................................................................. 1

       A.    AMG Misstates Its Burden And The Legal Standard Under *Rogers*.......... 2

       B.    AMG Cannot Prove That Humvees Have "No Artistic Relevance." ......... 5

       C.    AMG Cannot Prove That The Alleged Use Was "Explicitly
             Misleading."................................................................................................. 6

       D.    AMG Cannot Carry Its Heavy Burden Of Proving That It Has A
             "Particularly Compelling" Case Of Consumer Confusion. ...................... 7

II.    AMG CANNOT CARRY ITS BURDEN, AS A MATTER OF LAW, THAT
       IT POSSESSES A PROTECTIBLE "HUMVEE TRADE DRESS.".................. 14

       A.    Humvees Do Not Have A "Consistent Look." ......................................... 14

       B.    AMG Cannot Carry Its Burden Of Establishing Secondary Meaning...... 16

       C.    AMG Cannot Carry Its Burden Of Establishing That Its Purported
             Trade Dress Is Non-Functional................................................................ 19

III.   AMG'S REMAINING CLAIMS FAIL AS A MATTER OF LAW. .................. 20

CONCLUSION...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*,
747 F.2d 81 (2d Cir. 1984) .................................................................18

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*,
364 F. Supp. 3d 291 .......................................................................4

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
311 F.3d 796 (7th Cir. 2002) ..............................................................16

*Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc.*,
718 F.2d 1201 (1st Cir. 1983) .............................................................20

*Betches, LLC v. Awesomeness TV, Inc.*,
2017 WL 10456833 (S.D.N.Y. Apr. 25, 2017) ...............................................4

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ..........................................................4, 11

*Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011) ......................................................................1, 2

*Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*,
2015 WL 3385683 (S.D.N.Y. May 26, 2015) ................................................19

*Caterpillar Inc. v. Walt Disney Co.*,
287 F. Supp. 2d 913 (C.D. Ill. 2003) .......................................................8

*Charles Atlas Ltd. v. DC Comics, Inc.*,
112 F. Supp. 2d 330 (S.D.N.Y. 2000) ......................................................14

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
696 F.3d 206 (2d Cir. 2012) ..............................................................16

*Chum Ltd. v. Lisowski*,
198 F. Supp. 2d 530 (S.D.N.Y. 2002) ......................................................17

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) .......................................................................6

*Classic Touch Décor, Inc. v. Michael Aram, Inc.*,
2015 WL 6442394 (E.D.N.Y. Oct. 23, 2015) ................................................15

**TABLE OF AUTHORITIES**
<u>continued</u>

<u>Page(s)</u>

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*,
    886 F.2d 490 (2d Cir. 1989)..................................................................5, 7, 8

*Cummings v. Soul Train Holdings LLC*,
    67 F. Supp. 3d 599 (S.D.N.Y. 2014)..........................................................4, 7

*DeClemente v. Columbia Pictures Inds.*,
    860 F. Supp. 30 (E.D.N.Y. 1994) ...........................................................10, 14

*Disney Enters., Inc. v. Sarelli*,
    322 F. Supp. 3d 413 (S.D.N.Y. 2018)......................................................12, 13

*Donahue v. Artisan Entertainment, Inc.*,
    2002 WL 523407 (S.D.N.Y. 2002)..................................................................2

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ......................................................................3, 4

*Electronic Arts, Inc. v. Textron Inc.*,
    2012 WL 3042668 (N.D. Cal. Jul. 25, 2012)..................................................3

*Elements/Jill Schwartz, Inc. v. Gloriosa Co.*,
    2002 WL 1492197 (S.D.N.Y. July 15, 2002) ...............................................15

*Erchonia Corp. v. Bissoon*,
    410 F. App'x 416 (2d Cir. 2011) ..................................................................17

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ..........................................................................3

*Facenda v. NFL Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)..........................................................................2

*Gen. Motors Co. v. Urban Gorilla, LLC*,
    2010 WL 5395065 (D. Utah Dec. 27, 2010)................................................16

*General Motors Corp. v. Lanard Toys, Inc.*,
    468 F.3d 405 (6th Cir. 2006) ........................................................................16

*George Basch Co. v. Blue Coral, Inc.*,
    968 F.2d 1532 (2d Cir. 1992).........................................................................12

*Giggle, Inc. v. netFocal, Inc.*,
    856 F. Supp. 2d 625 (S.D.N.Y. 2012)...........................................................17

**TABLE OF AUTHORITIES**
<u>continued</u>

<u>Page(s)</u>

*Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Grp., Inc.*,
    808 F. Supp. 1112 (S.D.N.Y. 1992)..................................................................... *passim*

*Gordon v. Drape Creative, Inc.*,
    909 F.3d 257 (9th Cir. 2018) .........................................................................2, 3, 5

*Gottlieb Development LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008)..........................................................8, 10, 13

*Gucci Am., Inc. v. Guess?, Inc.*,
    831 F. Supp. 2d 723 (S.D.N.Y. 2011).......................................................................17

*Hormel Food Crop. v. Jim Henson Prods., Inc.*,
    1995 WL 567369 (S.D.N.Y. Sept. 25, 1995)...................................................11, 13

*J.T. Colby & Co. v. Apple Inc.*,
    2013 WL 1903883 (S.D.N.Y. May 8, 2013) ..........................................................18

*Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*,
    184 F. Supp. 2d 311 (S.D.N.Y. 2001).......................................................................17

*Kensington Pub. Corp. v. Gutierrez*,
    2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009) ...........................................................5

*Kirby v. Sega of America, Inc.*,
    144 Cal. App. 4th 47 (2006) ...............................................................................2, 8

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
    239 F. Supp. 3d 710 (S.D.N.Y. 2017).......................................................................6

*Lombardo v. Dr. Seuss Enters., L.P.*,
    279 F. Supp. 3d 497 (S.D.N.Y. 2017).......................................................................2

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012)................................................................. *passim*

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016).......................................................................19

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
    292 F. Supp. 2d 535 (S.D.N.Y. 2003)..................................................................14, 15

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) ...........................................................................4, 9, 20

# TABLE OF AUTHORITIES
<u>continued</u>

**<u>Page(s)</u>**

*Mech. Plastics Corp. v. Titan Techs., Inc.*,
    823 F. Supp. 1137 (S.D.N.Y. 1993)...................................................................19

*Medina v. Dash Films, Inc.*,
    2016 WL 3906714 (S.D.N.Y. July 14, 2016) ...................................................4, 8

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
    74 F. Supp. 3d 1134 (N.D. Cal. 2014) .................................................................3

*Nabisco, Inc. v. Warner-Lambert Co.*,
    220 F.3d 43 (2d Cir. 2000)..................................................................................10

*Novalogic, Inc. v. Activision Blizzard*,
    41 F. Supp. 3d 885 (C.D. Cal. 2013) ...............................................................2, 3

*Nulux, Inc. v. Ramirez*,
    2008 WL 11411300 (E.D.N.Y. Oct. 31, 2008).....................................................18

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)..............................................................2, 7, 8, 9, 10

*Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*,
    134 F.3d 749 (6th Cir. 1998) ..............................................................................10

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012)................................................................16

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)....................................................................... *passim*

*Rossner v. CBS, Inc.*,
    612 F. Supp. 334 (S.D.N.Y. 1985) .....................................................................17

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
    193 F. Supp. 3d 245 (S.D.N.Y. 2016).................................................................19

*Sherwood 48 Assoc. v. Sony Corp. of Am.*,
    213 F. Supp. 2d 376 (S.D.N.Y. 2002)..................................................................8

*Simon & Schuster, Inc. v. Dove Audio, Inc.*,
    970 F. Supp. 279 (S.D.N.Y. 1997) .......................................................................5

*Star Indus., Inc. v. Bacardi & Co., Ltd.*,
    412 F.3d 373 (2d Cir. 2005)................................................................................12

# TABLE OF AUTHORITIES
#### continued

**Page(s)**

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998)...................................................................................9

*Syler v. Woodruff*,
    610 F. Supp. 2d 256 (S.D.N.Y. 2009)...................................................................8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001)...............................................................................................19

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
    875 F. 3d 1192 (9th Cir. 2017) ..............................................................................2

*Twin Peaks Prods., Inc. v. Publications, Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)........................................................................2, 4, 5

*University of Alabama Board of Trustees v. New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) .........................................................................3, 4

*VIRAG S.R.L. v. Sony Computer Entm't Am. LLC*,
    2015 WL 5000102 (N.D. Cal. Aug. 21, 2015) ......................................................3

*Westchester Media v. PRL USA Holdings, Inc.*,
    214 F.3d 658 (5th Cir. 2000) .................................................................................5

*Wham-O. Inc. v. Paramount Pictures Corp.*,
    286 F. Supp. 2d 1254 (N.D. Cal. 2003) ...........................................................8, 10

*World Championship Wrestling v. Titan Sports, Inc.*,
    46 F. Supp. 2d 118 (D. Conn. 1999)....................................................................20

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ...................................................9, 10, 14, 20

### STATUTES

Federal Anti-Dilution Act...........................................................................................20

Lanham Act.................................................................................................... *passim*

### OTHER AUTHORITIES

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*,
    (5th ed. 2019) .................................................................................................17, 19

U.S. Constitution, First Amendment..................................................................... *passim*

## INTRODUCTION

AMG's Opposition obfuscates the undisputed material facts and the established law in the hopes of creating the illusion of a disputed factual issue. In actuality, there is nothing for the jury to decide. All of the facts relevant to this Motion are undisputed, including the content of the Accused Games and their marketing, which speak for themselves. Review of the undisputed facts confirms that, as a matter of law, AMG cannot carry its heavy burden of proving that Activision's depiction of Humvees has "no artistic relevance" to the Accused Games or "explicitly misleads" as to AMG's sponsorship, endorsement, or approval of these Games.

Review of the cases applying *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), including Second Circuit cases, further confirms that summary judgment is appropriate. AMG does not cite a single case that allowed claims even remotely like those at issue here to proceed to trial, and it largely ignores the dozens of cases that are directly on point. This is a simple case, made even simpler by AMG's admission that its vehicle is so closely associated with the U.S. military that it is "etched in the nation's consciousness through its service around the world." Opp. (Dkt. 171) at 3. When the strong First Amendment interests in expressively depicting U.S. soldiers using authentic military equipment are weighed against the hypothetical, nonexistent risk that consumers might purchase an Accused Game under the belief that AMG is associated with it, the result is not even close. Summary judgment not only is warranted, it is the only way to ensure that others who seek to make realistic works about the military – or expressive works of any kind – are not deterred from doing so by the fear of meritless and protracted litigation.

## I. AMG CANNOT CARRY ITS BURDEN OF PROVING THAT ACTIVISION'S USE HAS NO ARTISTIC RELEVANCE OR IS EXPLICITLY MISLEADING.

AMG admits that each of the Accused Games is an expressive work, entitled to robust First Amendment protection. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 790

(2011).[1]  AMG's trademark infringement and related claims thus are governed **not** by the

*Polaroid* "likelihood of confusion" test, but by *Rogers* and the many cases that follow it in the

context of video games and fictional works.  Because the law compels summary judgment, AMG

mischaracterizes the applicable standards, invents nonexistent factual "disputes," and assesses

the *Polaroid* factors in a manner that ignores the context of the use and the purposes of the

Lanham Act.[2]

      A.      **<u>AMG Misstates Its Burden And The Legal Standard Under <em>Rogers</em>.</u>**

AMG seeks to distract from the undisputed facts and controlling case law by repeatedly

misstating the legal standard.  Among the most serious of these misstatements is AMG's

assertion that ***Activision*** bears the burden of proving it meets the *Rogers* test.  In fact,

Activision's burden is minimal: it need only establish that its alleged use of AMG's trademark or

trade dress is in connection with an expressive work protected by the First Amendment.  *Gordon*

*v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018).  Since Activision easily has met that

threshold, ***AMG*** must "overcome the ***presumption***" that its claims are barred by *Rogers*.  *Twin*

*Peaks Prods., Inc. v. Publications, Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993) (emphasis

---

[1] First Amendment protection for the Accused Games is not lost or diminished if the mark appears in related marketing or promotional materials for the Games, especially when (as here) they accurately reflect or depict the content of the constitutionally protected expressive work.  *See Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 514 (S.D.N.Y. 2017) (First Amendment applied to "use in connection with advertising").  The cases cited by AMG do not support its contrary assertion, as they involved commercials that did ***not*** accurately reflect the advertised work.  *See Donahue v. Artisan Entertainment, Inc.,* 2002 WL 523407, at *7 n.5 (S.D.N.Y. 2002) (plaintiff's images used in advertising for a film that she did not act or star in); *Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1011-12 (3d Cir. 2008) (plaintiff's voice was used in an ad for a video game that he did not appear in).

[2] The existence of the Construction Sets (which do not include AMG's trademarks or trade dress) does not deprive Activision of First Amendment protection for the Accused Games.  *See Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885 (C.D. Cal. 2013).  Moreover, ancillary products to the Accused Games such as the Construction Sets are encompassed within *Rogers*' protections.  *See Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F. 3d 1192, 1197 (9th Cir. 2017); *see also Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47, 52 (2006) (First Amendment applied even where "[s]everal promotional products are associated with the [video] game," including a lunch box and Hot Wheels car).  Regardless, ████████████████████████████████████████, Activision did not willfully infringe AMG's alleged trade dress (████████████████████████████rty), and AMG has not proven any actual consumer confusion.  Thus, the Construction Sets are not likely to confuse and AMG cannot recover an accounting of Activision's profits (█████████████████████████).

added).  Specifically, AMG must prove that (1) the alleged use has "no artistic relevance at all" to the Accused Games, or (2) Activision "explicitly misleads" consumers into believing that AMG is the source of the Accused Games or sponsored, endorsed, or approved them.  *Rogers*, 875 F.2d at 999.  Only if AMG meets that heavy burden can the Court conclude that "the public interest in avoiding consumer confusion outweighs the public interest in free expression."  *Id*. *See also Gordon*, 909 F.3d at 264.  It is for this reason that not a single reported decision – in any jurisdiction – allowed a case like this to proceed past summary judgment.[3]

AMG's other major misstatement is that the Second Circuit applies a different legal standard (and a different interpretation of *Rogers*) from every other Circuit, and therefore, every one of the more than a dozen analogous cases is "of no more than academic value."[4]  Opp. at 12. But the legal standard in this Circuit is the same as – and in fact was the basis for – the standard articulated by every Circuit that has addressed the use of a trademark in an artistic work, including the Sixth, Ninth, and Eleventh Circuits.  These Circuits expressly adopted and carefully applied *Rogers*.  *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925-28 (6th Cir. 2003) (citing *Rogers:* "[B]oth the Second Circuit and the Ninth Circuit have held that in Lanham Act false endorsement cases involving artistic expression, the likelihood of confusion test does not give sufficient weight to the public interest in free expression."); *E.S.S.*, 547 F.3d at 1099-1101 (citing *Rogers*); *University of Alabama Board of Trustees v. New Life Art, Inc.*; 683 F.3d

---

[3]  AMG falsely cites *Electronic Arts, Inc. v. Textron Inc.*, 2012 WL 3042668, at *2-3 (N.D. Cal. Jul. 25, 2012), as an example of a court "denying summary judgment."  Opp. at 28.  The *Textron* court denied a ***motion to dismiss.***

[4]  To the extent AMG makes any effort to distinguish the relevant cases, its description is almost universally misleading.  For example, in *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 (9th Cir. 2008), the court assumed the mark was distinctive.  In *VIRAG S.R.L. v. Sony Computer Entm't Am. LLC*, 2015 WL 5000102, at *2 (N.D. Cal. Aug. 21, 2015), *aff'd*, 699 F. App'x 667 (9th Cir. 2017), the mark was "prominently displayed" in two games.  In *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1136 & 1138 (N.D. Cal. 2014), the mark, if selected by the player, was displayed in every multiplayer match.  In *Novalogic*, 41 F. Supp. 3d at 890-93, the mark was displayed prominently and on Xbox consoles and strategy guides.

1266, 1277-78 (11th Cir. 2012) (same).  Similarly, decisions in this Circuit (even those cited by AMG) consistently adopt and follow the interpretations of *Rogers* articulated by courts in other Circuits – especially *E.S.S.,* 547 F.3d at 1099-1101, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013), and *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).  *See, e.g.*, *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 180 (S.D.N.Y. 2012) (relying on *E.S.S.*); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014) (citing *Brown*); *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (citing *Mattel*)*; A.V.E.L.A., Inc. v. Estate of Marilyn Monroe,* 364 F. Supp. 3d 291, 321 (citing *Brown*).

AMG's assertion that the Second Circuit modified or narrowed *Rogers* in *Twin Peaks* grossly overstates that case and ignores its facts.  *Twin Peaks* did not address the conflict between the Lanham Act and the First Amendment when an author seeks to expressively and contextually depict a product or mark as part of a creative work.  It dealt with the very different circumstance in which the maker of one product (which the Court also found infringed the plaintiff's copyright) appropriated a preexisting commercial title or brand as its own title, in an effort to compete with the senior user in the marketplace.  The defendant in *Twin Peaks* not only used the title of the plaintiff's television show for its own book about that same show, but also depicted on the book's cover a quote and image taken from the show.  996 F.2d at 1370-71.  Thus, the case fell within a category that *Rogers* specifically held was **not** subject to its "limiting construction" of the Lanham Act: namely, "misleading titles that are confusingly similar to other titles."  *Rogers*, 875 F.2d at 999 n.5 ("The public interest in sparing consumers this type of confusion [from misleading titles] outweighs the slight public interest in permitting authors to

use such titles.").[5]  This distinction between misleading titles and contextual uses was confirmed in *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 296 & 300 n. 20 (S.D.N.Y. 1997), which noted that applying the Lanham Act to the use of trademarks in expressive works "pose[s] a far greater threat to free expression" than does a "confusingly similar" title.

The Ninth Circuit reached a similar conclusion in *Gordon* when it held that the junior user's use of a mark "***in the same way as the senior user***" did not raise the same First Amendment concerns as did the contextual use of a mark "in the creation of a song, photograph, video game, or television show."  909 F.3d at 261, 270 (emphasis added).  So did the Fifth Circuit.  *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664-65 & 667-68 (5th Cir. 2000) (defendant appropriated the word POLO as a magazine ***title*** to trade on Ralph Lauren's clothing brand).  Where, as here, the mark is just one element of the defendant's own creative expression, and is not used solely for product "labeling" purposes, courts must accept some confusion and apply the Lanham Act only where the use "explicitly misleads."  *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) ("[S]omewhat more risk of confusion is to be tolerated when a trademark holder seeks to enjoin artistic expression[.]")  AMG cannot meet that very strict standard.

### B.    AMG Cannot Prove That Humvees Have "No Artistic Relevance."

AMG's argument that the depiction of Humvees is not "artistically relevant" to the Accused Games exemplifies its desperation to twist the law and invent factual disputes.  The

---

[5]  The other cases cited by AMG also fall within this category, and thus are equally inapposite.  *See, e.g.*, *Kensington Pub. Corp. v. Gutierrez*, 2009 WL 4277080, *6 (S.D.N.Y. Nov. 10, 2009) (competing books using the title "BAD BOYS"); *Betches, LLC v. Awesomeness TV, Inc.*, 2017 WL 10456833, *7-8 (S.D.N.Y. Apr. 25, 2017 (competing websites using the word "BETCHES").  If anything, *Twin Peaks* expanded *Rogers* by holding that the First Amendment ***does*** apply to "misleading" titles, but only where the plaintiff can make a "particularly compelling" showing that the title would be likely to confuse.  996 F.2d at 1379.  Notably, in cases such as *Rogers* the mark was used ***in*** the work itself, but the plaintiff did not even claim that the contextual uses implicated the Lanham Act.

burden is not on Activision to prove that "it had a proper artistic motivations [*sic*] for using the Humvee vehicle." Opp. at 11. **AMG** must prove that Activision's depictions of Humvees have "**no** [i.e., zero] artistic relevance to the underlying work **whatsoever**[.]" *Rogers*, 875 F.2d at 999 (emphasis added). The artistic relevance is obvious, even to AMG and its expert. *See* Kitchen Decl., Ex. A, ¶ 27 ("The use of Humvee vehicles contributed significantly to the authenticity and realism of the games at issue."). The Court need not adduce the subjective intent of every Activision employee to draw the same conclusion.[6] *See Louis Vuitton Malletier S.A. v. Waner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (denying discovery into intent where it was clear that defendant "intended to create an artistic association with Louis Vuitton"). Regardless, there is ample evidence reflecting that Humvees were "not arbitrarily chosen **just** to exploit the publicity value of their real life counterparts, but instead have genuine relevance to the [Accused Games]." *Rogers*, 875 F.2d at 1001 (emphasis added). *See* SUF, ¶¶ 14-19. Every witness confirmed that the depiction of Humvees in the Accused Games was to create realism – a legitimate artistic purpose. None of that evidence or testimony is, or can be, disputed.

### C.    AMG Cannot Prove That The Alleged Use Was "Explicitly Misleading."

When the *Rogers* Court used the term "explicitly misleading," it meant what it said. There must be an "overt indication of authorship or endorsement," **not** an "implicit[] suggest[ion]" or "ambiguous" statement. 875 F.2d at 1000. AMG admits that there was no such "overt indication." AMG also now admits that its entire case hinges on the supposition that the mere appearance of Humvees in connection with the Accused Games might give some

---

[6] The uncontested Declaration of Activision's President, Rob Kostich is not "conclusory." Opp. at 12. *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 239 F. Supp. 3d 710, 737 (S.D.N.Y. 2017) (Parties "routinely submit affidavits on their own behalf whose only purpose is to substantiate the claims alleged."). AMG cannot create factual disputes by claiming that Activision might **also** have had a "commercial, non-artistic intent." Opp. at 12. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988) ("First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away.").

hypothetical players the "***impression*** of [an] association between Activision and [AMG]."  Opp. at 28 (emphasis added).  Even if true (which it is not), that is precisely the type of "risk of misunderstanding, not engendered by any overt claim[, that] is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act."  *Id*. at 1001.[7]  *See also Cummings*, 67 F. Supp. 3d at 606 (allegations that the use "caused confusion and mistake to consumers, would-be consumers, [and] fans" was insufficient to state a claim).

**D.     AMG Cannot Carry Its Heavy Burden Of Proving That It Has A "Particularly Compelling" Case Of Consumer Confusion.**

If, despite the plain language of *Rogers*, the Court elects to review the *Polaroid* factors to help assess whether Activision's use is "explicitly misleading," the Court should not (as AMG misleadingly argues) march through "the same eight factors that comprise the *Polaroid* test for likelihood of confusion that apply in every Lanham Act case."  Opp. at 2.  "[T]he *Polaroid* analysis changes when the First Amendment is implicated."  *Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 808 F. Supp. 1112, 1119 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 1477 (2d Cir. 1993); *see also Cliffs Notes*, 886 F.2d at 495 n.3 (*Polaroid* applied "with proper weight given to First Amendment considerations[.]").  In cases involving expressive works, "mark owners must accept 'some' confusion when outweighed by free speech interests."  *Louis Vuitton*, 868 F. Supp. 2d. at 184 n.19.  The Court also must keep in mind that the "core concern" of trademark law "is confusion related to purchasing decisions, and not confusion generally."  *Id.* at n.17.  The use therefore must "dupe[] consumers into buying a product they mistakenly believe is sponsored by the trademark owner."  *Id.* at 180.  Because creative uses do

---

[7] AMG never identifies the "multiple affirmative misrepresentations" (Opp. at 28) it claims Activision made.  If AMG is referring to Activision's End-User License Agreement ("EULA"), nothing there suggests an affiliation with AMG or that Activision licensed any intellectual property from AMG – only that Activision owns the source code and game assets, such as 3D models and artwork.  For that reason, the EULA also is not "literally false" (Opp. at 39) and thus cannot support a claim for false advertising.

not raise the same commercial purchasing concerns as do competing products using the same (or a confusingly similar) name or logo, even courts that considered the *Polaroid* factors conceded that their application is "at best awkward" (*Cliffs Notes*, 886 F.2d at 495 n.3), or that some of the factors are irrelevant (*Louis Vuitton*, 886 F. Supp. 2d at 184 n.19). *See also Syler v. Woodruff*, 610 F. Supp. 2d 256, 266 (S.D.N.Y. 2009) ("If the allegedly infringing mark is not used in a traditional trademark way – that is, to designate the source or origin of the [work] – the consumer interest in avoiding deception is too slight to warrant application of the Lanham Act.").

AMG also is wrong when it states that courts "rarely resolve these issues at the summary judgment stage." Opp. at 16. Courts routinely dismiss claims like these before trial, either on the ***pleadings*** or on summary judgment. *See, e.g.*, *Girl Scouts*, 808 F. Supp. at 1118 ("Defendants in trademark infringement cases have been granted summary judgment where First Amendment concerns were prevalent."); *Medina*, 2016 WL 3906714, at *6 (granting motion to dismiss because "[c]onsideration of plaintiff's complaint and the expressive work that prompted it permits only one conclusion[.]"). "In cases involving free speech … protracted litigation may chill the exercise of First Amendment rights. For that reason, summary judgment is a favored remedy[.]" *Kirby*, 144 Cal. App. 4th at 54. Moreover, courts consistently have concluded, ***as a matter of law***, that the depiction of a product in an audiovisual work (including in trailers for that work) is ***not*** the type of use that is likely to cause consumer confusion or mistaken purchasing decisions.[8] AMG ignores ***all*** these cases, just as it ignores the Supreme Court's and Second Circuit's cautions about the special scrutiny that must be brought to trade dress claims.

No reasonable juror could find for AMG. There is not a single disputed material ***fact***

---

[8]  *See, e.g.*, *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003); *Wham-O Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003); *Gottleib Development LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625 (S.D.N.Y. 2008); *Sherwood 48 Assoc. v. Sony Corp. of Am.*, 213 F. Supp. 2d 376 (S.D.N.Y. 2002), *aff'd in part, vacated in part*, 76 F. App'x 389 (2d Cir. 2003).

relevant to any of the *Polaroid* factors, let alone any that could "tilt the scales in favor of the mark holder at the expense of the public's right to free expression." *Louis Vuitton*, 868 F. Supp. 3d at 184. Review of the factors instead reflects that none of the consumer interests in "avoiding deception" are implicated here.

***Strength of the Mark.*** To the extent this factor is even relevant (*see id.*, at 184 n.19), AMG's simplistic discussion misses the point. When a mark is used for an expressive purpose, the strength or fame of that mark argues ***against*** a finding of confusion. *See Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 273 (S.D.N.Y. 1992) ("Where the plaintiff's mark is being used as part of a jest or commentary, the opposite [*i.e.*, strength favors the defendant] can be true."). This is particularly true when, as here, the alleged mark has acquired "a meaning beyond its source-identifying function." *Mattel*, 296 F.3d at 900-01. The newspaper articles submitted by AMG, as well as the popular media identified by Activision, prove this point. In all of those materials, the Humvee appears and is described as a component of the military's fleet of combat vehicles,[9] not as a brand. That is equally true of the Accused Games.

***Similarity of the Marks.*** Whether Humvees look realistic in the Accused Game is irrelevant, because there is no similarity in "overall impression" between a video game depiction of a Humvee in an epic fictional adventure and a real-life Humvee being advertised to military procurement professionals, "given the context in which a purchaser sees them." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998). Consumers know the difference between the "use in commerce" of a trademark for the purchase of designating a product's

---

[9] AMG's effort to discount the hundreds of unlicensed appearances of Humvees in movies, books, video games and television shows (especially those about war) as simply examples of other "infringements" is unavailing. For more than 30 years, filmmakers, game designers, and authors have discussed, included, and depicted Humvees in all manner of creative works, making Humvees a staple of military fiction. *See Girl Scouts*, 808 F. Supp. at 1126 n. 22. There is ample undisputed evidence that the third-party works were widely distributed, including AMG's own documents reflecting that among works depicting Humvees are some of the all-time "highest-grossing" movies.

source and the referential use of a trademark to give context to a scene in a movie or video game. *See Yankee Pub.*, 809 F. Supp. at 273 (use was referential, not a source identifier); *Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 754 (6th Cir. 1998) (picture of famous building was not an "indicator of source or sponsorship"). In fact, where "the parties' use of [the] marks is so dissimilar[,]" summary judgment is appropriate without "examin[ing] the remaining *Polaroid* factors." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 48 (2d Cir. 2000); *DeClemente v. Columbia Pictures Inds.*, 860 F. Supp. 30, 48 (E.D.N.Y. 1994) ("Because the marks are used for different purposes and are presented to the public differently, even though they say the same thing, they are dissimilar and no issue of fact is created.").

**Competitive Proximity/Bridging the Gap.** AMG admits that the parties' products do not directly compete and that they are marketed to completely different purchasers. *See, e.g.*, Opp. at 23 n.15 ("[V]ideo game purchasers cannot reasonably be expected to call AM General's warranty department."). That undisputed fact is dispositive. There is no support for AMG's claim that the mere use of a trademark in or on a video game causes players to mistakenly believe that AMG sponsors or endorses that game. In fact, that same argument also was made by the plaintiffs in all of the cases cited by Activision, and was soundly rejected in all of those cases. *See*, *e.g.*, *Gottlieb*, 590 F. Supp. 2d at 635; *Wham*-O, 286 F. Supp. 2d at 1262.

AMG's argument that it is in the "business" of licensing video games is contradicted by the evidence. It also is irrelevant. AMG concedes, and its own evidence confirms, that selling video games (or any type of audiovisual work) never has been a "focus of" its business. *Girl Scouts*, 808 F. Supp. at 1126. The entirety of AMG's video game licensing business consists of ███ licenses over the course of three decades. Not one licensed game was released since ███, and AMG is not actively engaged in any game projects. Gold Decl., ¶ 31. AMG's documents

also reflect that its video game licenses ***collectively*** generated less than $███ in revenue for

AMG since 2003 (Gold Decl., Ex. M), a "negligible" part of AMG's $███ overall revenue

during that same period.  *Girl Scouts*, 808 F. Supp. at 1126.  These one-off licenses are irrelevant

to whether the parties' "primary products" are "sufficiently far apart that consumer confusion is

unlikely." *Hormel Food Crop. v. Jim Henson Prods., Inc.*, 1995 WL 567369, at *6 (S.D.N.Y.

Sept. 25, 1995), *aff'd*, 73 F.3d 497 (2d Cir. 1999).

    ***Actual Confusion.***  AMG's ***only*** purported evidence of "actual confusion" is the highly

flawed "confusion" survey conducted by Yoram Wind.  Wind's survey is improper for many

reasons.  *See* 7/25/19 Motion to Strike (filed concurrently).  But even if the survey was valid, it is

insufficient because it "indicates at most that some members of the public would draw the

incorrect inference that [Humvee] has some involvement with the [Accused Games]," and that

alone cannot overcome the First Amendment.  *Rogers*, 875 F.2d at 1001.  *See also Girl Scouts*,

808 F. Supp. at 1128 (same); *Brown*, 724 F.3d at 1246 ("Even if Brown could offer a survey

demonstrating that consumers of the *Madden NFL* series believed that Brown endorsed the

game, that would not support the claim that the use was explicitly misleading to consumers.").

Indeed, in *Rogers,* the plaintiff offered a survey in which ***38 percent*** of respondents purportedly

believed the plaintiff had something to do with the film – more than double the degree of

confusion that AMG claims to be present here.  Even that degree of confusion "raise[d] no

'genuine' issue that requires submission to a jury."  *Rogers*, 875 F.2d at 1001.

    Moreover, Wind's survey questions were so overtly leading, and the survey results so

underwhelming, that, if anything, the survey confirms that consumer confusion is nonexistent or

highly unlikely.  Rather than subjecting his respondents to the Accused Games themselves, or

even to representative excerpts of the Games, Wind showed respondents a 90-second video of

stitched-together pieces extracted from *one level* of *one game* (*Modern Warfare 2*), in which a player ignores the mission and instead circles around stationary Humvees.  *See* Carter Decl., Ex. 4.  Wind then asked a leading question: whether the game "was sponsored or endorsed *by the manufacturer of Humvee*."  (emphasis added).  But even using a misleading video *and* leading question, Wind's survey reflected, at best, an immaterial *6%* difference in purported "confusion" between those exposed to his video and those exposed to a "control" video without Humvees.[10] It is thus inconceivable that anyone playing the *actual* Games (and seeing Humvees in context) would be confused.  *See Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 435 (S.D.N.Y. 2018) ("[d]e minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion.").

        *Intent.*  AMG admits that "bad faith" is "synonymous with willfulness."  Opp. at 24. Therefore, AMG must prove that Activision intended "to exploit the good will and reputation of [AMG]… *with the intent to sow confusion* between the two companies' products."  *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 388 (2d Cir. 2005) (emphasis added).  As set forth in Activision's Opposition to AMG's PMSJ (Dkt. 164), there is no evidence that Activision intended to "sow confusion" in the marketplace.  That fact also prevents AMG from seeking disgorgement of Activision's profits.  *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992).  Regardless, "[i]ntent is largely irrelevant in determining if consumers likely will be confused as to source."  *Girl Scouts*, 808 F. Supp. at 1128 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986))*.*

---

[10]  AMG's description of Wind's findings also are misleading.  Only *11%* of respondents exposed to his video answered "yes" to whether *Modern Warfare 2* was "sponsored or endorsed by the manufacturer of Humvee," while *5%* of respondents exposed to a "control" video (which did *not* contain a Humvee) gave the same answer.  AMG's 16% number includes respondents who answered "yes" to the improper legal question: "Does the game *require* the approval or permission of the manufacturer of Humvee?"  *See* 7/25/19 Motion to Strike.

***Quality of the Products.***   AMG does not coherently explain how the quality of its vehicles has any relevance here.  *See Hormel*, 1995 WL 567369, at *7 (claim that defendant associated its SPAM mark with "uncleanliness and ugliness" was "beside the point."); *Louis Vuitton*, 868 F. Supp. 2d at 184 n.19 (this factor "do[es] not really apply.").  Nevertheless, if, as AMG claims, members of the public are familiar with the high quality of Humvees, then Activision's portrayal of them as "unstable and easily destroyed" ***mitigates*** any likelihood of confusion.  *Sarelli*, 322 F. Supp. 3d at 437-38 ("[I]f Defendants' services are in fact of a lesser quality, it is likely that ordinary consumers will assume Plaintiffs are not responsible for them.").

***Consumer Sophistication.***   AMG does not dispute the fact that the parties' customers are sophisticated and that purchasers of the Accused Games know what they are buying and who the source is.  Instead, AMG argues only that "video gamer[sic] players… recognize that product placements stem from express authorization[.]"  Opp. at 25.  That assertion has nothing to do with consumer sophistication, lacks evidentiary support, and is contradicted by the case law.  *See Louis Vuitton*, 868 F. Supp. 2d at 184 n.19 ("moviegoers are sophisticated enough to know that the mere presence of a brand name in a film, especially one that is briefly and intermittently shown, does not indicate that the brand sponsored the movie."); *Gottlieb*, 590 F. Supp. 2d at 635 ("[C]ourts that have considered the appearance of consumer products in motion pictures routinely fail to find any likelihood of confusion.").  Confusion is especially unlikely because Humvees are pieces of military equipment, not consumer products, and they frequently appear in media depictions of modern warfare.

***Delay.***   AMG's laches argument misses the point.  AMG's lengthy, unexplained delay is itself evidence of a lack of consumer confusion.  The delay is especially notable since AMG now admits that it "actively monitors for infringements," Gold Decl., ¶ 32, and that tens of millions of

copies of the Accused Games were sold.  Opp. at 4.  AMG's failure to act indicates that

confusion was insubstantial or that AMG did not believe it had a claim.  *See DeClemente*, 860 F.

Supp. at 50 ("The plaintiff's delay…weigh[s] in favor of not finding a likelihood of consumer

confusion[.]"); *Charles Atlas Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 340 (S.D.N.Y. 2000)

(failure to notice the infringement for seven years "is a strong indicator that the [use] did not

create a significant likelihood of confusion[.]" (quoting *Yankee Pub.*, 809 F. Supp. at 274-75)).

## II.    AMG CANNOT CARRY ITS BURDEN, AS A MATTER OF LAW, THAT IT POSSESSES A PROTECTIBLE "HUMVEE TRADE DRESS."

Activision's Motion identified three independently dispositive flaws in AMG's claim of

protectable trade dress rights.  AMG has not met its burden of overcoming any of them.[11]

### A.    Humvees Do Not Have A "Consistent Look."

AMG concedes that it must prove that its entire Humvee product line has a "consistent

look," but cannot avoid its own admission that each version of the Humvee "has its own look."

AMG thus backpedals, now arguing that it actually has *two* trade dress "groups" – one for

Humvees with a "slanted back," and one for Humvees with "an open-top without a slanted

back."[12]  Opp. at 30.  AMG cannot redefine its product line at this late stage of litigation.  *See*

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 550

(S.D.N.Y. 2003) (attempt to limit products at issue on summary judgment "simply comes too late

for the Court to consider").  Even if it could, AMG's new theory is not supported by any

---

[11] AMG falsely claims that its *2016* registration encompassing three discrete exterior elements for vehicles and toys is "prima facie evidence" of validity and secondary meaning.  AMG's registration does not encompass any of its "common law rights in the HUMVEE Trade Dress®."  RSUF, ¶ 92.  The registration also does not carry any presumption of validity prior to 2016.  *See* Motion (Dkt. 139) at 32, n. 25.  AMG also cannot rely on abandoned *third-party* registrations for proof of its trademark rights.

[12] AMG first identified these "product lines" in a supplemental interrogatory response served one week before the summary judgment deadline.  RSUF, ¶ 93.  AMG previously claimed that ███████████████████████ ████████████████████████  *See, e.g.*, Mayer Decl., Ex. 2 at 101:4-7.

evidence, and it is inconsistent with AMG's own papers, which refer to a single "Humvee Trade Dress" and to Humvees generally. *See, e.g.*, Opp. at 3, 29. AMG's own evidence confirms that AMG never marketed Humvees as two separate "product lines" (slant-back and open-back), but as an overarching "family of vehicles."[13] *See Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, 2002 WL 1492197, at *7 (S.D.N.Y. July 15, 2002) (rejecting attempt to designate distinct product lines where evidence reflected all products sold together).

Regardless, AMG cannot demonstrate that even its self-defined product lines have a consistent look, because its own authority recognizes that "[t]he elements specified as the trade dress must be present in every item in that product line." *Classic Touch Décor, Inc. v. Michael Aram, Inc.*, 2015 WL 6442394, at *7 (E.D.N.Y. Oct. 23, 2015)). AMG confirms that its trade dress "includes 11 elements" (Opp. at 3), including an "x-design" door, a "deep water fording exhaust pipe," "side mirror mounts," and "seven vertical ovals comprising the front grille." AMG's 56.1 Counter-Statement ("CSUF"), ¶ 10. But the curated selection of Humvee images submitted by AMG reflect that these elements do not appear on every vehicle – even those within the two "groups" that AMG claims to be at issue.[14] *See, e.g.*, Gold Decl., Ex. B at AMG00202558 (███████████████████████████████████); *id.*, at AMG0075366 (███████████████████████████). AMG even admits that the water fording kit and "x-doors" appear only "in certain configurations." CSUF, ¶ 10. At deposition, AMG could not ██████████████████████████████████ (AMG's Response

---

[13] *See, e.g.*, Mayer Decl., Ex. 58 at AMG0020265 (slant-back models (M1151A1, M1167) and open-back models (M1152, M1165) part of the "M1100 Family of Vehicles."); AMG0020296 (four models part of the "M1100 Series"); *id.*, Ex. 59 at AMG0011056-11059 ███████████████████████████████ ██████); AMG0010022-25 (similar).

[14] AMG offers pictures of just 15 of the 32 Humvee models it claims are at issue, leaving the Court to guess what those other models look like, or whether they consistently feature the alleged trade dress. *Compare* Struble Decl., Ex. 141 at p. 21, *with* Gold Decl., ¶ 10, Exs. B & C.

to Activision's 56.1 Statement ("RSUF"), ¶ 94).[15]  AMG's attempt to minimize "x-design doors" as a "minor variation" (Opp. at 30) is particularly disingenuous, because the "x-design" was one of only ***three*** elements AMG included in its 2016 registration (RSUF, ¶ 93), and AMG alleged it as a "distinctive element" (Compl., ¶ 35).

      **B.**    <u>**AMG Cannot Carry Its Burden Of Establishing Secondary Meaning.**</u>

AMG bears the burden of proving that its trade dress has acquired secondary meaning as a source-identifier, under both federal ***and*** state law.  *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 325 (S.D.N.Y. 2012) ("Under New York law, as under § 43(a) of the Lanham Act, to prevail on a claim for trademark infringement of an unregistered mark, a plaintiff must establish secondary meaning.").[16]  Nevertheless, AMG offers no actual evidence of secondary meaning, relying entirely on an assortment of unauthenticated old newspaper articles, two vague spreadsheets, and three legal decisions that are not "evidence" and do not support AMG's assertion.[17]  None of that is sufficient.

AMG initially ignores its admission that its use of the trade dress is ***not exclusive***.  Since 1999, multiple elements of AMG's trade dress, including the "overall shape of the vehicle," are

---

[15]  To the extent any formulation of AMG's trade dress is used consistently, it ***does not*** consist of elements serving a source-designating function.  *See Maharishi*, 292 F. Supp. 2d at 550 n.12 (no trade dress where consistent elements would "plainly be generic, not distinctive, because it would cover a very broad range of [products] and would be composed of commonly-used elements in the industry.").  Granting AMG trade dress protection based on inconsistent combinations of generic features would allow it to monopolize the depiction of any military vehicle that includes any assortment of the features it claims as part of its trade dress, such as "rectangular doors," "a boxy shape," or a "slanted upper rear."  RSUF, ¶ 114.

[16]  AMG applies the wrong factors.  Courts in this Circuit must consider "consumer studies linking the mark to a source," "length and exclusivity of the mark's use," and "attempts to plagiarize the mark."  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012).  Licensing is ***not*** typically one of the factors considered.  *Id.*  Even if it were, AMG's overall licensing of the combined "HUMVEE IP" (not just the trade dress) has been minimal – less than $2.6 million in revenue to AMG over 15 years.

[17]  In *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405 (6th Cir. 2006), the Court did ***not*** consider the purported "military" trade dress elements at issue here and looked to a (flawed) survey involving ***only*** a GM Hummer.  *Id.* at 418.  *See also AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 817 (7th Cir. 2002) (about DaimlerChrysler's rights in Jeep grille design); *Gen. Motors Co. v. Urban Gorilla, LLC*, 2010 WL 5395065, at *8 (D. Utah Dec. 27, 2010) (addressing GM's trade dress for Hummer vehicles, not Humvee Trade Dress).

shared with the Hummer vehicles sold by General Motors.  RSUF, ¶ 32.  Moreover, for at least

20 years, video games, movies, and other audiovisual works depicted Humvees ███████

████████████ from AMG.  This third-party use is "very persuasive in proving lack

of secondary meaning[.]"  *Giggle, Inc. v. netFocal, Inc.*, 856 F. Supp. 2d 625, 632 (S.D.N.Y.

2012).  *See also Rossner v. CBS, Inc.*, 612 F. Supp. 334, 339 (S.D.N.Y. 1985) ("frequent and

disparate uses" in third-party works "prevent [plaintiff] from demonstrating secondary

meaning").  AMG also does not submit any "consumer studies linking the mark to a source,"

which further "weighs heavily against a finding of secondary meaning."[18]  *Chum Ltd. v.

Lisowski*, 198 F. Supp. 2d 530, 533-35 (S.D.N.Y. 2002).  Finally, as discussed, Activision did

not use Humvees to intentionally deceive consumers and AMG does not proffer any evidence

that a "competitor has attempted to use a mark similar to" AMG's.[19]  *Chum*, 198 F. Supp. 2d at

536.  As for the meager evidence that AMG did produce, none is sufficient to meet its burden:

 *Sales*.  AMG's "sales data" does not support secondary meaning for the basic reason that

AMG has only one Humvee customer in the United States: the U.S. government.  AMG cannot

prove (and does not attempt to prove) that the exterior appearance of the vehicle played any role

in these sales.  *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*

("McCarthy"), § 15:47 (5th ed. 2019) (sales "may be due to dozens of factors, only one of which

may be the drawing power of the trademark.").[20]

---

[18] AMG cannot remedy this failure by invoking its consumer confusion survey, because "drawing a secondary meaning inference, even from a perfect confusion survey, is improper."  *Gucci Am., Inc. v. Guess?, Inc.*, 831 F. Supp. 2d 723, 749 (S.D.N.Y. 2011).  That respondents may recognize a Humvee in a video without associating it with a source does not establish secondary meaning, only that consumers know what a Humvee looks like.

[19] Contrary to AMG's assertion (Opp. at 34), "proof of intentional copying, by itself, does not trigger any presumption of secondary meaning under Second Circuit precedent."  *Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 319 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 335 (2d Cir. 2002).

[20] AMG also fails to attribute any U.S. sales or revenue after 1995 to the models of Humvees at issue.  *See* Gold Decl., Ex. F (████████████████████████████); *Erchonia Corp. v. Bissoon*, 410 F. App'x 416, 418 (2d Cir. 2011) ("non-itemized sales and advertising figures are insufficient to raise a triable issue of fact").

***Unsolicited Media Coverage.*** The newspaper articles and other media produced by AMG are not "unsolicited free advertising." Opp. at 3. They are photographs of U.S. military operations abroad that include Humvees – because, of course, the U.S. military used Humvees in military operations abroad. *See* Struble Decl., Exs. 172, 176-78, 180, 189-90, 194-97, 200, 219, 221-22, 228-233. "Proof of a product's popularity should not be equated with proof of secondary meaning." *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 90 n.9 (2d Cir. 1984). For media coverage to be relevant, it must specifically discuss the alleged trade dress ***and*** associate that trade dress with a single source. Not one of the hundreds of pages submitted by AMG does that. *Nulux, Inc. v. Ramirez*, 2008 WL 11411300, at *7 (E.D.N.Y. Oct. 31, 2008) (no weight given to articles that "do not address the design of the [plaintiff's product]"). In fact, one article notes that a different company ("TPI Composites") is creating a "greener Humvee" (Struble Decl, Ex. 198), while many others refer to the "U.S. Army's" Humvee or even a "US military humvee." *See, e.g., id.*, Exs. 172, 176, 238, 239.[21]

***Advertising.*** AMG's claim that it spent nearly ████████ on marketing over 20 years is insufficient. AMG has not offered any evidence reflecting how or where that money was spent, what market segment was targeted, or what proportion, if any, was spent promoting its purported trade dress (as opposed to other features of its vehicle). *See J.T. Colby & Co. v. Apple Inc.*, 2013 WL 1903883, at *10 (S.D.N.Y. May 8, 2013), *aff'd*, 586 F. App'x 8 (2d Cir. 2014) ("Without evidence of how advertising funds were actually used, it is difficult to conclude that the money contributed to the creation of secondary meaning of the mark."). Moreover, "[s]econdary meaning 'cannot usually be proven by advertising that merely pictures the claimed trade dress

---

[21] AMG's claim that Activision cannot argue both that the Humvee is culturally relevant and lacks secondary meaning is incorrect. For example, U.S. mail trucks and yellow taxicabs are recognizable and culturally relevant, but neither is associated in the minds of the public with a single manufacturer or source.

and does nothing to emphasize it or call attention to it.'" *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 655 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017). Even AMG's limited sample of advertising (unaccompanied by evidence reflecting any public distribution) demonstrates that AMG's marketing depicts various Humvee models, and did not emphasize the purported Humvee Trade Dress.  *See* Gold Decl., Ex. K at pp. 49, 52, 53, 58.

### C.    AMG Cannot Carry Its Burden Of Establishing That Its Purported Trade Dress Is Non-Functional.

AMG has not controverted Activision's evidence of functionality, including the admissions on AMG's *own website* that Humvees are "a pure example of form following function.[22]  RSUF, ¶ 100.  AMG instead argues only that its trade dress need not be "essential" or "integral."  Opp. 35-36.  That is the wrong standard.  Features also are functional where they "affect[] the cost or quality of the article."  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001).  AMG proffers no evidence indicating that the features of its trade dress (in isolation or as a whole) do not affect the cost or quality of its Humvees.  Just the opposite.  While AMG points to design proposals presented by competitors for the original government contract for Humvees,[23] AMG admitted that it won a government contract because its proposal was "█ ███████████████████████████████████████"  RSUF, ¶ 109.  That admission is fatal.[24]

*See Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, 2015 WL 3385683, at *7 (S.D.N.Y. May

---

[22] AMG asserts that *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 271 (S.D.N.Y. 2016), "applied an outdated test" (Opp. at 36 n.23), but it then relies on that case (*id.*, at 36 n.22), which was affirmed by the Second Circuit two years ago.  699 F. App'x 93 (2d Cir. 2017).  The principle that advertising can be strong evidence of functionality also is supported by other authorities.  *See* McCarthy, § 7:74.

[23] AMG also ignores that "[t]he relevance of any alternative designs" to determining non-functionality is "contingent upon a demonstration that those designs can perform the function of the [Humvee] design equally well as that design."  *Schutte Bagclosures Inc.*, 193 F. Supp. 3d at 270.  AMG has not submitted evidence that any "alternative designs" are equally as effective as the Humvee.

[24] Whether AMG's trade dress is functional "in video game or toys" (Opp. at 37) is irrelevant.  The "proper inquiry" concerns "the feature(s) of the product claimed to be distinctive," not how the trade dress is used.  *Mech. Plastics Corp. v. Titan Techs., Inc.*, 823 F. Supp. 1137, 1145 (S.D.N.Y. 1993), *aff'd*, 33 F.3d 50 (2d Cir. 1994).

26, 2015) (what plaintiff sought "to protect is 'nothing other than an assemblage of functional parts,' which is itself 'designed to result in superior performance.'").

## III.     AMG'S REMAINING CLAIMS FAIL AS A MATTER OF LAW.

AMG does not dispute that a finding for Activision on the Lanham Act claims would also bar the state law claims, including dilution, false advertising, and unfair competition. *See Yankee Pub.*, 809 F. Supp. at 267; *Louis Vuitton*, 868 F. Supp. at 184. AMG also does not dispute that artistic works are "noncommercial" speech, immune from liability under the Federal Anti-Dilution Act. *See Mattel*, 296 F.3d at 906. AMG's only basis for its assertion that the Accused Games are "commercial" is that they were intended to make money. That claim is contradicted by the case AMG cites for this proposition. *See World Championship Wrestling v. Titan Sports, Inc.,* 46 F. Supp. 2d 118, 123 (D. Conn. 1999) ("An expressive use does not become a commercial use solely because the use increases sales for a user."). The Accused Games are not "advertising" for Humvees or any other commercial product. Nor are they "advertisements" for future expansions – a claim that would turn every movie, book, or video game into an "advertisement" for its sequel. As for AMG's assertion that Activision used Humvees to refer to the Accused Games in a way that "blurs" its trademark, that contention can be put to rest by reviewing the hundreds of other works that depict Humvees in the exact same manner. *See, e.g.*, *Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1210 (1st Cir. 1983) ("If the other registrations and uses … have not already diminished the uniqueness of [plaintiff's] mark, [defendant's] use of it … will not diminish it, either.").

## CONCLUSION

For the foregoing reasons, the Court should grant Activision's Motion.

DATED:  New York, New York
         July 25, 2019

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Karin G. Pagnanelli (*kgp@msk.com*)
Marc E. Mayer (*mem@msk.com*)
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile:  (310) 312-3100

-and-

Bradley J. Mullins (*bjm@msk.com*)
Lillian J. Lee (*l2l@msk.com*)
Timothy M. Carter (*tmc@msk.com*)
437 Madison Avenue, 25th Floor
New York, NY  10022
Telephone: (212) 509-3900
Facsimile:  (212) 509-7239

Attorneys for Defendants Activision
Blizzard, Inc., Activision Publishing, Inc.,
and Major League Gaming Corp.

21